in any event. An attempt by the state to recede from its contract cannot be construed into appropriating property under its power of eminent domain.

The company had some right under the grant. The act creating the company granted to it certain rights, so far as the state had the power to make such grant, and the company was to make annual compensation for such grant. The fact that the grant is not as broad and as effective as its terms imply is no reason why the state can recede from it. It might furnish ground for the company to seek to be relieved from paying the purchase price that the state cannot legally transfer what is undertook to grant. The fact that the company is getting less than the contract contemplated it should get is no reason why the state can refuse to receive the consideration.

We may assume that the Legislature had the power to repeal the charter of the corporation, but it cannot, by repeal, take away the vested rights. We need not consider whether the company has sufficient life to continue this proceeding, as the complaint of the taxpayer may well be heard and the court may well act upon it. The mandamus should therefore issue, leaving it to be determined in a proper way and proper manner what right the company, or a trustee appointed to receive its assets, may have.

---

(81 Misc. Rep. 541.)

In re SEWER IN KISSEL AVE. AND BRIGHTON BOULEVARD IN CITY OF NEW YORK.

(Supreme Court, Special Term, Kings County. July, 1913.)

1. MUNICIPAL CORPORATIONS (§ 278*)—ASSESSMENT PROCEEDINGS—POWER TO INSTITUTE—BOARD OF ESTIMATE AND APPORTIONMENT.
     Though Greater New York Charter (Laws 1901, c. 466) § 428, authorizes local boards to deal in the first instance with applications for local improvements made to them by petition, the board of estimate and apportionment of the city of New York, with the co-operation of the mayor of the city, may of its own volition and initiative carry through public sewer improvements as shall be deemed best for the city at large, irrespective of any action or lack of action by the subordinate board.
     [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 734–738, 744; Dec. Dig. § 278.*]

2. MUNICIPAL CORPORATIONS (§ 450*)—SEWERS.
     A sewer or need of a sewer is not necessarily a matter of purely local concern, but may affect the whole city.
     [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1073, 1074; Dec. Dig. § 450.*]

3. MUNICIPAL CORPORATIONS (§ 407*)—CONSTITUTIONAL LAW (§ 290*)—DUE PROCESS—ASSESSMENT PROCEEDINGS—HEARING.
     Refusal of the board of estimate and apportionment of the city of New York to permit objectors to present evidence at the "hearing" called for in Greater New York Charter (Laws 1901, c. 466) § 980, in assessment proceedings for public improvements, did not constitute an appropriation of property without due process of law; such "hearing" being but a step in the determination by the board of the advisability of instituting proceedings to acquire title to carry out a proposed improvement, and the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

property owner being abundantly protected by Greater New York Charter (Laws 1901, c. 466) §§ 396, 978, 979, 980, 981, 984, which provide for a complete hearing when the proceeding shall have advanced to a point fixed by law for giving the same.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1003, 1004; Dec. Dig. § 407;* Constitutional Law, Cent. Dig. §§ 871–875; Dec. Dig. § 290.*]

**4. CONSTITUTIONAL LAW (§ 290*)—DUE PROCESS—ASSESSMENT PROCEEDINGS.**

Due process of law requires that every person to be assessed for the purpose of taxation be given an opportunity to be heard at some stage of the proceeding.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 871–875; Dec. Dig. § 290.*]

**5. MUNICIPAL CORPORATIONS (§ 495*)—BOARD OF ESTIMATE AND APPORTIONMENT—REVIEW OF DECISIONS—RIGHT.**

The decisions of the board of estimate and apportionment of the city of New York are not reviewable by the courts, when made by the board in the exercise of the legislative power delegated to it by the Legislature.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1166; Dec. Dig. § 495.*]

**6. MUNICIPAL CORPORATIONS (§§ 406, 407*) — DUE PROCESS — DELEGATION OF LEGISLATIVE POWERS—ASSESSMENT DISTRICT.**

The Legislature has power to fix an area of assessment without either notice or hearing to the people affected by that area, and also the power to delegate that function to subordinate governmental agencies.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1001–1004; Dec. Dig. §§ 406, 407.*]

**7. MUNICIPAL CORPORATIONS (§ 450*) — ASSESSMENT DISTRICT — POWER OF BOARDS.**

The power to fix the area of assessment and the benefit in case of a sewer rests in both the board of estimate and apportionment and in the commissioners of estimate and assessment, but the exercise of this power in its finality rests under Greater New York Charter (Laws 1901, c. 466) § 396, with the commissioners; the action of the board being properly viewed as a recommendation suggesting the area benefited by the proposed improvement, which recommendation may or may not be filed by the commissioners after investigating and hearing.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1073, 1074; Dec. Dig. § 450.*]

In the matter of the application of the City of New York. On motion for the appointment of commissioners of estimate and a commissioner of assessment for the purpose of acquiring an easement for sewer purposes in Kissel avenue and Brighton boulevard, borough of Richmond. Motion granted.

Archibald R. Watson, Corp. Counsel, of New York City (Joel J. Squier and L. Howell La Motte, both of New York City, of counsel), for petitioner.

William Allaire Shortt, of New York City, for objectors Sailors' Snug Harbor and others.

John Bright Stevens, of New York City, for objector Stevens.

Henry W. Rianhard, of New York City, for objectors Rianhard and others.

Kenney & Eadie, of New Brighton, for objector Walser.

SCUDDER, J.   This is a motion for the appointment of commissioners of estimate and a commissioner of assessment for the purpose of acquiring an easement for sewer purposes in Kissel avenue and Brighton boulevard in the borough of Richmond.

The motion is opposed on the ground, first, that the board of estimate and apportionment is without authority to institute a proceeding for the acquisition of an easement for sewer purposes, and that such a proceeding must be initiated by the local board of the district in which the lands, easements in which are acquired, are located; second, that the statute and Constitution require the hearing of evidence by the board of estimate and apportionment, and its refusal to swear and hear witnesses renders its resolution fixing an area of assessment for benefit, without such a judicial hearing, void.

It appears in the minutes of the board of estimate and apportionment of December 12, 1912, that the borough president of Richmond recommended and requested the board of estimate and apportionment to acquire title to the sewer easements hereinbefore referred to.  Upon this recommendation and request the board of estimate and apportionment authorized this improvement and directed the institution of these proceedings.  After giving a public hearing in accordance with an advertised notice by publication in the City Record, a corporation newspaper, on the 9th day of January, 1913, the board of estimate and apportionment adopted a resolution pursuant to the provisions of sections 396 and 970 of the Greater New York Charter, as amended, deeming it for the public interest that title and easement for sewer purposes in the streets named be acquired by the city of New York, and requested the corporation counsel to apply for the appointment of commissioners, in pursuance of the provisions of the Greater New York charter.

It appears, also, that the board of estimate and apportionment on January 9, 1913, after giving a public hearing pursuant to a notice published in the City Record, a corporation newspaper, which notice gave the proposed area of assessment for this improvement, adopted the proposed area of assessment for benefit in these proceedings.  The affidavits submitted in opposition to this motion show that upon one or more occasions a petition was presented to the local board of the district in which it is proposed to locate the new sewer, praying for its construction, and that in each instance the petition was rejected by the local board.

Section 396 of the Greater New York Charter provides:

"Sec. 396. Id.—Power to Acquire Lands for Sewers.  The city of New York is authorized to acquire title for the use of the public to all or any of the lands and premises required for sewers, or to easements therein for that purpose, whether the same be above or below high-water mark or under water. The board of estimate and apportionment, at the request of the president of the borough where such lands are located, is authorized to direct the same to be done.  It shall be the duty of the corporation counsel, when requested in writing by the board of estimate and apportionment, immediately to institute a proceeding to acquire title for the use of the public to lands and premises or easements therein, required for the building of sewers or drains, in the same manner that is provided by this act for the acquisition of lands for the purpose of opening streets.  The expenses incurred in the acquisition of such lands and premises, with the buildings and improvements thereon, so

far as the same shall be taken in such a proceeding, shall be assessed in accordance with the provisions of this act relating to the opening of streets upon all the property deemed by the commissioners of estimate and assessment appointed in such proceeding to be benefited by the acquisition of such lands for such purpose, and upon the owners thereof or persons interested therein."

[1] It is contended on the part of the objectors hereto that section 428 of the Greater New York Charter takes the institution of these proceedings out of the power of the board of estimate and apportionment and gives it to the local board of the district in which the property sought to be condemned is located. Section 428 of the charter provides:

"Sec. 428. A local board, subject to the restrictions provided by this act, shall have power in all cases where the cost of the improvement is to be met in whole or in part by assessments upon the property benefited, to initiate proceedings for the following purposes: To construct tunnels and bridges lying wholly within the borough; to acquire title to land for parks and squares, streets, sewers, tunnels and bridges, and approaches to bridges and tunnels; to open, close, extend, widen, grade, pave, regrade, repave and repair the streets, avenues and public places, and to construct sewers within the district; to flag or reflag, curb or recurb the sidewalks, and to relay crosswalks on such streets and avenues; to set or to reset street lamps; and to provide signs designating the names of the streets. All resolutions affecting more than one local improvement district or the borough generally, shall be adopted only at a joint meeting of all the local boards of the borough, and by a majority of the members of said boards."

This section of the charter relates to acquiring title to land for parks, squares, streets, etc., as well as for sewers. The Court of Appeals in the case of Reis v. City of New York, 188 N. Y. 58, 80 N. E. 573, fully reviews and determines to what extent section 428 of the charter restricts the powers of the board of estimate and apportionment to institute local improvements upon its own motion. Referring to the sections of the charter affecting local boards, including section 428, supra, the court says:

"Referring to these sections of the charter, it is insisted in behalf of the appellant that they deprive the board of estimate and apportionment of any power to change the city map so as to open or close streets except in cases where the proceeding is inaugurated by a local board. I am unable to discover any such limitation or restriction either in the express language of these sections or deducible therefrom by fair implication. If the view thus contended for be correct, there would be no power in the general municipal government to set on foot any public improvement which demanded or contemplated the opening or closing of a street, no matter how desirable, without first obtaining the sanction of an official board of a local and limited jurisdiction. In that event it is quite conceivable that the selfish interests of a locality might outweigh and prevail against the interests of the community at large. It seems to me that the plain intent of these statutory provisions is to confer upon the local boards the authority to deal in the first instance with applications for local improvements made to them by petition, but that the Legislature meant to commit to the jurisdiction of the board of estimate and apportionment, with the co-operation of the chief executive of the city, the power of its own volition to initiate and carry through such public improvements as they should deem for the best interests of the city at large, irrespective of any action or lack of action by the subordinate local boards." 188 N. Y. 66, 67, 80 N. E. 575.

This case (Reis v. City of New York) must be considered as stare decisis upon all questions involved therein, and as establishing the

law whenever similar questions are presented. It is not only authority upon the questions which it expressly decides, but also upon all such as logically come within the principles therein determined. Lahr v. Metropolitan El. R. Co., 104 N. Y. 268, 10 N. E. 528.

[2] The reasoning of the court in Reis v. City of New York applies equally strong in the case of a sewer, if not more so, than in the case of the opening of a street. A sewer or the need of a sewer may involve or affect the whole city; it is not of necessity, nor as a fact, a matter of purely local concern. It seems to me uncontrovertible that the board of estimate and apportionment, at the request of the president of the borough of Richmond, under the authority of section 396 of the charter and the facts herein shown, had the authority to institute proceedings to acquire title to an easement for the sewer purposes herein and duly exercised that authority, and I so hold.

[3] Passing to the second objection, it is contended by the learned counsel for the objectors that these proceedings are illegal, and that this motion cannot be entertained, because the board of estimate and apportionment omitted "a statutory and constitutional sine qua non of jurisdiction" when it refused to permit objectors to offer and swear witnesses and to hear their testimony at the hearing herein before the board of estimate and apportionment held January 9, 1913.

[4] It has always been the general rule in this country, in every system of assessment and taxation, to give the person to be assessed an opportunity to be heard at some stage of the proceeding. That "due process of law" requires this has been quite uniformly recognized. Stuart v. Palmer, 74 N. Y. 192, 30 Am. Rep. 289.

If I am correct in my interpretation of the sections of the charter controlling the proceeding before me, "the hearing" called for in section 980 of the charter is but an incident or step in the determination by the board of estimate and apportionment of the advisability of instituting proceedings to acquire title to carry out a proposed improvement, and was not intended by the Legislature as the formal hearing and notice preliminary and essential to the taking of private property for public purpose under the guise of an assessment and tax, failure to make provision for which hearing would be in contravention of the Constitution, because depriving an owner of his property "without due process of law."

I am fortified in my opinion that this must be so because there does not seem to exist valid reason for two judicial hearings to impose one tax, and the Legislature has abundantly protected the property owner by providing for a very full and complete hearing in a case such as this in the following provisions of the charter:

By section 396 of the charter, the expense incurred in the acquisition of lands for sewers is assessed in accordance with the provisions of the charter relating to the opening of streets.

Section 978 of the charter, after providing that commissioners of estimate and assessment shall give notice of their appointment in such a proceeding, stating in that notice "a time and place" when parties interested "shall be heard in relation thereto," further provides:

"At the time and place fixed by said notice, * * * the said commissioners shall hear such owners and examine the proof of such claimant or claim-

ants, or such additional proof and allegations as may then be offered by such owners or on behalf of the city of New York."

By section 979 of the charter the commissioners are authorized to administer oaths, to reduce testimony to writing, to cause such maps to be prepared as will assist them to hear and determine the claims of owners and persons interested, and cause diagrams to be prepared which shall distinctly indicate the names of owners of land to be taken or assessed by such proceeding.

Section 980 provides that the commissioners, after hearing such testimony and considering such proof as may be offered, shall, without unnecessary delay, ascertain and estimate the compensation which ought justly to be made by the city of New York to respective owners, and that the commissioner of assessment shall make a just and equitable estimate and assessment, also of the value of the benefit and advantage of such improvement to the respective owners entitled unto or interested in the lands not required for the said improvement.

By section 396 of the charter the expenses incurred in the acquisition of such lands are assessed upon all the property deemed by the commissioners of estimate and assessment appointed in such proceeding to be benefited by the acquisition of such lands for such purpose (sewers), and upon the owners thereof or persons interested therein.

By section 981 the commissioners are required to deposit in the bureau of street openings the abstract of their estimate and assessment and to publish a notice for 15 days in the City Record and in the corporation newspapers, stating their intention to present their report for confirmation to the court at a specified time and place, and all persons interested, having any objection, are notified to file the same in writing with the commissioners within 20 days, and the commissioners are required to hear parties so objecting at the place and time specified in the notice. At the time and place named in the notice the commissioners are required to hear the persons who have objected, and who may then and there appear, and are required to adjourn from time to time until all such persons shall be fully heard.

It is provided in section 984 that after considering the objections, and making any alteration of their estimate or assessment, the commissioners shall file their reports in the office of the clerk of the county where the lands are situated at least five days before the time mentioned in the notice for the presentation of their report to the court for confirmation or the date to which the same has been adjourned.

It has been held that due process of law requires an orderly proceeding, adapted to the nature of the case, in which the citizen has an opportunity to be heard, and to defend, enforce, and protect his rights. Stuart v. Palmer, 74 N. Y. 191, 30 Am. Rep. 289. Certainly the foregoing procedure prescribed by the Legislature gives to the owners of the property to be assessed for the expense of the proposed sewer herein, as well as the owners of the property to be taken therefor, ample notice of the contemplated assessment and taking, and affords them a fair opportunity to be heard thereon in an orderly proceeding adapted to the nature of the case.

The learned counsel for the objectors ignores the provisions of the

charter referred to, and contends that the constitutional requirement can alone be satisfied by a judicial hearing in this proceeding by the board of estimate and apportionment. In this I think he is in error. In Matter of Common Council of Amsterdam, 126 N. Y. 164, 27 N. E. 274, Judge Finch said:

"But the constitutionality of an act like that under discussion does not depend upon a double notice and a double opportunity to be heard. The Legislature may grant so much if it shall choose; but it is not bound to do so, and acts within its authority if it requires one sufficient and adequate notice, and not two. * * * The assessment by the commissioners is proposed and merely tentative, and has no effect upon the owner or his property until final confirmation, and at that point, at that vital and essential 'stage of the proceedings,' the charter requires notice to the owner, and gives him an opportunity to be heard as to the assessment. If such notice is awarded by the statute, it is no consequence whether there is a hearing before the commissioners."

Mr. Justice Gray in Spencer v. Merchant, 125 U. S. 355, 356, 8 Sup. Ct. 921, 926 (31 L. Ed. 713), said:

"If the Legislature provides for notice to and hearing of each proprietor, at some stage of the proceedings, upon the question what proportion of the tax shall be assessed upon his land, there is no taking of his property without due process of law."

By the terms of the charter we have already seen that a hearing has been provided for in a proceeding such as this, but it is yet to be had herein because this proceeding has not advanced to the point fixed by law for the giving of the hearing.

[5] The decisions of the board of estimate and apportionment are not open to review by the courts when made in the exercise of its legislative power delegated to the board by the Legislature. This rule applies alike to the decisions of the board authorizing the sewer in Kissel avenue and to the fixing of an area of assessment for that improvement; both acts falling within the board's legislative and discretionary power. In Spencer v. Merchant, supra, Mr. Justice Gray (125 U. S. 356, 8 Sup. Ct. 927, 31 L. Ed. 713) said:

"In the absence of any more specific constitutional restriction than the general prohibition against taking property without due process of law, the Legislature of the state, having the power to fix the sum necessary to be levied for the expense of a public improvement, and to order it to be assessed, either, like other taxes, upon property generally, or only upon the lands benefited by the improvement, is authorized to determine both the amount of the whole tax and the class of lands which will receive the benefit, and should therefore bear the burden, although it may, if it sees fit, commit the ascertainment of either or both of these facts to the judgment of commissioners. When the determination of the lands to be benefited is intrusted to commissioners, the owners may be entitled to notice and hearing upon the question whether their lands are benefited and how much. But the Legislature has the power to determine, by the statute imposing the tax, what lands, which might be benefited by the improvement, are in fact benefited; and if it does so, its determination is conclusive upon the owners and the courts, and the owners have no right to be heard upon the question whether their lands are benefited or not, but only upon the validity of the assessment, and its apportionment among the different parcels of the class which the Legislature has conclusively determined to be benefited. In determining what lands are benefited by the improvement, the Legislature may avail itself of such information as it deems sufficient, either through investigations by its commit-

tees, or by adopting as its own the estimates or conclusions of others, whether those estimates or conclusions previously had or had not any legal sanction."

[6] The Legislature has the power to fix an area of assessment without either notice or hearing to the people affected by that area, and also has power to delegate that function to subordinate governmental agencies. People v. Mayor, 4 N. Y. 419, 55 Am. Dec. 266; McLaughlin v. Miller, 124 N. Y. 510, 26 N. E. 1104; Matter of Cruger, 84 N. Y. 619.

"The right to compensation is the right of the citizen whose land is taken, which the Legislature can neither ignore nor deny. The power of taxation, on the other hand, is vested in the Legislature and is practically absolute, except as restrained by constitutional limitations. The power of taxation being legislative, all the incidents are within the control of the Legislature. The purposes for which a tax shall be levied, the extent of taxation, the apportionment of the tax, upon what property or class of persons the tax shall operate, whether the tax shall be general or limited to a particular locality, and in the latter case the fixing of a district of assessment, the method of collection, and whether the tax shall be a charge upon both persons and property, or only on the land, are matters within the discretion of the Legislature and in respect to which its determination is final. * * * There is no constitutional guaranty that taxation shall be just and equal. * * * The Legislature may itself fix a district of assessment, or the power may be delegated by the supreme legislative body to the authorities of subordinate political and municipal divisions, or other official agencies, as may also the incidents of the power, such as the apportionment and distribution of the tax, as between the persons and property upon which it is laid. * * * The imposition of local assessments for benefits is an exercise of the taxing power." Genet v. City of Brooklyn, 99 N. Y. 296, 1 N. E. 777.

While section 396 of the Greater New York Charter and section 980 thereof seem to conflict in their provisions with reference to the final authority to determine the area of assessment for benefit in the matter of acquiring lands for sewers, this conflict is not important, and clearly arises from the fact that the Legislature, when it amended section 980 of the charter, conferring upon the board of estimate and apportionment the duty to fix and determine upon an area of assessment for benefit in all proceedings authorized by it and taking from the commissioners of estimate and assessment the power to extend the assessment to all lands benefited by the improvement, omitted to amend to conform therewith the last paragraph of section 396 of the charter which reads:

"The expenses incurred in the acquisition of such lands and premises, with the buildings and improvements thereon, so far as the same shall be taken in such a proceeding (to acquire lands for sewers), shall be assessed in accordance with the provisions of this act relating to the opening of streets upon all the property deemed by the commissioners of estimate and assessment appointed in such proceeding to be benefited by the acquisition of such lands for such purpose, and upon the owners thereof or persons interested therein."

[7] It thus appears that the power to fix the area of assessment and benefit in the case of a sewer rests in the two boards, but the exercise of that power in its finality under the terms of section 396 of the charter remains with the commissioners of estimate and assessment, and they will fix the area of assessment for benefit when in the

exercise of their discretion they assess the expense upon all the property deemed by them to be benefited.

The action, then, of the board of estimate and apportionment can be viewed in the light of a recommendation suggesting the area benefited by the proposed improvement, and this suggestion will or will not be followed by the commissioners of estimate and assessment, as they shall determine after hearing the property owners, taking the evidence, viewing the property, and determining where the benefit of the proposed improvement will fall.

It follows that the objectors then will have their day in court, and their opportunity not only to be heard upon the question of the assessment upon their property after it is laid, but also will have an opportunity to be heard upon the question whether their property is to be included within the area of assessment or is benefited at all. The action of the board of estimate and apportionment in attempting to fix and determine the area of assessment for benefit, and in refusing to give a judicial hearing to the property owners affected, in no way vitiates this proceeding.

Motion for appointment of commissioners granted.