DETERMINED IN THE

# FIRST DEPARTMENT

AT

# GENERAL TERM,

## November, 1888.

---

## THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v. THE AMERICAN BELL TELEPHONE COMPANY, Defendant.

*Tax imposed by chapter 542 of 1880, and chapter 361 of 1881, upon corporations — when a foreign telephone corporation carrying on its business in this State, through local companies acting as its agent, is liable to the tax — the tax imposed by section 3 on its capital is, since the passage of chapter 501 of 1885, limited to capital employed in this State.*

Upon the submission of a controversy between the People of the State of New York and the American Bell Telephone Company, to determine whether that corporation was liable to taxation, under chapter 542 of 1880, as amended by chapter 361 of 1881, it appeared that the corporation was formed, under the laws of the State of Massachusetts, to carry on the business of manufacturing, owning, selling, using, and licensing others to use, electric speaking telephones and other apparatus and appliances pertaining to the transmission of intelligence by electricity. The company has not engaged in, or carried on business within this State by its own officers or immediate agents, but what has been done by it has been through the agency and intervention of local corporations, formed under the laws of this State, and in a large degree pursuant to the authority of the defendant, with which companies three different forms of agreement were prescribed by the defendant, and executed or accepted by the local companies, for the carrying on and transaction of the telephone business.

One of these contracts, known as the exchange system, under which about four-fifths of the telephone business has been carried on, provides for the establishment of a central office, communication being carried on through it between the lessees of the company, which is supplied by the defendant at Boston with telephones, which, while remaining the property of the defendant, the

local company is authorized to lease to its patrons, reserving for the benefit of the defendant for the use of the telephone a rental or royalty fixed by the agreement, which the local company collects, together with an additional sum for the use of the poles, wires, switch-boards and other apparatus used in the transmission of intelligence in this manner, which are the property of the New York Company.

By the contract between the local company and the defendant it is further provided that the latter may intervene and collect from any sub-lessee for the use of any instrument, circuit and appliances, or under any subscription contract.

By another form of contract the local companies, which are not permitted without special authority to connect wires and telephones and carry on business between different exchange systems in the State, are permitted to do so, a rental or royalty being reserved, and also the right of the defendant, for the purpose of establishing personal communications or transmitting messages, to enjoy any right of the lessee to erect and maintain lines and to string its wires on the poles of the lessee.

Two other forms of contract, one for private lines and the other relating to connections between the exchange systems and the Western Union Telegraph Company, are provided, in which the customers are to take a lease and license from the defendant, which is only to be countersigned by the local company.

*Held*, that, to render the company liable to taxation under the statute, no proportionate amount of its business was required to be transacted within this State; but the fact that it has systematically done or carried on business in this State is the ground upon which the law has placed the liability to taxation.

That the local companies in letting and leasing the telephones, so far as the rental is reserved for the benefit of the defendant, act as its agents, the telephones remaining its property, and being, at all times, subject to its control, direction and disposition.

That this is more especially the case in the extra-territorial lines connecting different exchange systems, and in private and club lines, as they form no part of the exchange systems, but are substantially the lines of the defendant and are under its management, direction and control.

That where one party acts in this manner for another it acts for that other as his or its agent, and the business in which it acts is, to the extent that it is under the management, control and direction of the other, the business of the party exercising, or having the right to exercise this authority over it, and its rights are neither reduced nor qualified in this respect, because it has committed the management, control and direction to a great extent to the judgment and discretion of the local company.

That, so far as the rights, emoluments and rentals were reserved to the defendant through the intervention of the local companies, it was its business, which was transacted by means of what was no more than an agency, as that is defined and understood by the legal authorities, and that that was sufficient to bring the defendant within the liability to taxation created by the statute.

*The United States* v. *American Bell Telephone Company* (29 Fed. Rep., 17) distinguished.

That, as it appeared that the defendant had secured a dividend upon its capital employed in this State of ten per cent for the year 1882, increasing to sixteen per cent in 1885 and 1886, it was liable on this capital to pay the percentage imposed for the privilege of doing its business in this State, prescribed and designated by section 3 of chapter 361 of 1881. (VAN BRUNT, P. J., dissenting on the ground that it is only since the passage of chapter 501 of 1885, amending the act of 1881, that the defendant has been doing business within this State within the meaning of the statute as so amended.)

That, in addition to the tax imposed upon the defendant by section 3 of the act, it was also liable to pay a tax of five-tenths of one per cent upon its gross earnings in this State for the business here carried on by it, which was imposed by section 6 of the same act. (VAN BRUNT, P. J., dissenting on the ground above stated.)

*It seems*, under the case of *People* v. *Equitable Trust Company* (96 N. Y., 387), that the tax upon its capital might be calculated upon the entire capital of the company had the people claimed that that should have been done. (Per DANIELS, J.)

CASE submitted upon an agreed state of facts pursuant to section 1279 of the Code of Civil Procedure.

*William A. Poste*, deputy attorney-general, for the plaintiff.

*James C. Carter*, for the defendant.

DANIELS, J.:

The controversy submitted by the case presents the point of the liability of the American Bell Telephone Company, a corporation formed under the laws of the State of Massachusetts to carry on the business of manufacturing, owning, selling, using, and licensing others to use, electric speaking telephones, and other apparatus and appliances pertaining to the transmission of intelligence by electricity, to taxation under the laws of this State. This liability is asserted to have been created by chapter 542 of the Laws of 1880, as that was amended by chapter 361 of the Laws of 1881. In the argument of the case, which was very ably and searchingly conducted, the liability of the company for taxation under the laws of this State has been claimed, and as confidently denied, for the year 1882 to and including the year 1886. And by sections 3 and 6 of the act of 1881, this liability is made to depend upon the fact of the business of the corporation having been wholly or partially carried on within this State during these years. The taxes are not claimed by the State as taxes upon the corporate franchises of the defendant, but

upon its business, as that has been mentioned and made the basis of taxation in these sections of the act. They have been made expressly applicable to corporations organized by or under the laws of any other State, or country, doing business in this State, subject to certain exceptions not affecting the question of the defendant's liability. And by section 6 of the act of 1881, the language employed evinces the intention to have been to include telephone companies within the meaning and effect of the law. It is the fact of business having been here carried on by the defendant, more than the construction to be placed upon the law itself, on which the dispute between the parties has centered and been made to turn. And it is accordingly necessary to consider the facts agreed upon in the case to ascertain whether this company, created and incorporated under the laws of the State of Massachusetts, has, during these years, been doing business within the State of New York. By the case which has been agreed upon its transactions have been the same in character from 1881 to and including 1886. And if it was engaged in business within the meaning of the act in 1882, it follows that it has also been so engaged during the whole period included within the case

To render the company liable to taxation under the statute, no proportionate amount of its business has been required to be transacted within this State. But the fact that it has systematically done, or carried on, business in this State is what the law has placed the liability to taxation upon.

By its own officers, or immediate agents, it has not engaged in or carried on business within this State, but what has been done by it has been through the agency and intervention of local corporations, formed under the laws of this State, and in a large degree pursuant to the authority of the defendant. These corporations have been authorized by it chiefly to carry on what is described and mentioned as an exchange business in a circumscribed locality not exceeding the radius of fifteen miles in extent. And with the exception of the Metropolitan Company, whose contract embraces all the attributes of those made with other companies, three different forms of agreement have been prescribed by the defendant, and executed or accepted by the local companies, for the carrying on and transacaction of the telephone business. One of these contracts, when

separately made, as they usually have been, provides for a business known as the exchange system, by which a central office is established and communication is carried on through it between the subscribers or lessees of the company. In the course of the business of the New York Company, it is supplied at the city of Boston with telephones, including what is called a transmitter and receiver, the former being the means or apparatus of communicating and the latter the apparatus for receiving intelligence. These telephones, by the agreement for this purpose made, as well as by the other agreements, remain the property of defendant. And they are authorized to be leased by the New York Company to its patrons, but for the use of which a rental or royalty is required to be reserved for the benefit of the defendant. This rental, or royalty, is fixed by the agreement itself, and under the agreement relating to the exchange system about four-fifths of the telephone business has been and is carried on under that system. The poles, wires, switch-boards and other apparatus used in the transmission of intelligence in this manner, are the property of the New York Company, but the telephones themselves it has been specifically agreed, not only in the form of contract relating to the exchange system, but to each of the other systems, remain the property of the defendant. And for their use by the customers or patrons of the local company, a rent or royalty, is reserved to be paid to the defendant. By the mode in which the business is carried on, the New York or local company makes the leases to its customers and collects the rentals, not only for the defendant but for itself, for the use of its own apparatus, and the additional rental required to be paid for the use of the telephone. When contracts are made by the local company for the use of a telephone, it has been required, by the contract with that company and the defendant, that such contract shall express " in such form as the lessor shall from time to time approve, that the telephone is the property of the licensor ; that it is leased and licensed by it only as herein expressed, and that all use of it otherwise is an injury to and invasion of the rights of the licensor as owner thereof," etc. And it has been further stipulated and provided in the contract between the defendant and the local company that the former may intervene and " collect from any sub-lessee or subscriber all sums then or thereafter due to it, or due to the second party, for the use of any

instrument, circuits and appliances, or under any subscription contract. Or it may, so long as it shall see fit, leave in the enjoyment and use of the telephones any subscriber, or other person in actual possession, and collect from them such sums as may then and thereafter be or become due for the use of the telephone and exchange lines, appliances and services, and for that purpose shall be entitled to and may take possession of all the lines, fixtures, apparatus, appliances and premises of the second party, used for carrying on its business, and occupy and operate the same in connection with said telephones and those of additional customers as exchange systems or connect such lines with offices of its own for that purpose."

The local companies incorporated and carrying on the exchange system of business are not permitted, without special authority, to connect wires and telephones and carry on business between different exchange systems in the State. That authority has been provided for in another form of contract made by the defendant with the local companies, and it has been placed more especially under its own supervision and control than the exchange system itself. These have been denominated extra-territorial connecting lines. And it has been declared in the agreement, providing for the business of these lines in the same manner as in the agreement for the exchange system, that the telephones used remain the property of the defendant, and that the licensee shall pay to the defendant a rental or royalty, as before mentioned, for the use of the instruments. And that rental or royalty is in like manner provided for and declared in the agreement. As to these lines, the defendant has reserved the right to itself to use the telephones upon them, "for the purpose of establishing personal communication, or transmitting messages, between such places, and between such places and said exchanges; and to establish lines for that purpose may enjoy any rights of the lessee to erect and maintain lines, and may string its wires on the poles of the lessee," etc. "The lessee will also allow the lessor to connect the wires of any such lines with its said lines, in order to constitute thereby a through line, of which the lessee's lines, or any, or either of them, or any part or either of them, can form a portion, or link, in order to forward through messages, will make, or permit to be made, convenient switch-boards or other connections for that purpose." It then provides for a division

of the toll for the service performed, after deducting expenses, between the parties to the agreement, amounting for the defendant to one-fourth of the gross receipts of subscriptions and tolls. As to these telephones, it has also in like manner been provided that the sub-leases and licenses shall, in such form as the lessor shall from time to time approve, express the title of the lessor to the telephone and the patents, the extent of the license thereby granted, the purpose for which the telephone may be used, and that any other use of any telephone by any person, or non-payment of the rental and royalty of the licensor, is an injury to and invasion of its rights as owner thereof, and of the patent-rights used therein and thereby. It is further agreed that the defendant " may also enforce against such sub-licensee all rights and pursue all remedies given by and under such sub-license, and may use the name of the lessee for such purpose, or may require the lessee, at its own expense, to enforce the terms of such contracts." And " the lessor may also use the name of the lessee to protect its interests and enforce its rights hereunder, and the lessee shall execute assignments in accordance herewith."

The third form of contract, made and entered into by the defendant, is for supplying private lines and other purposes. These consist of one single circuit, neither permanently nor temporarily connected with any other circuit, and the telephones on which are to be used only for the individual and private business of the lessees and their employes; and the lines are not to extend more than twenty-five miles beyond the municipal limits of the city or town in which one end of the line is situated, and not to be used for more than four individuals, firms or corporations. Within this contract club lines also are included, consisting each of only a single circuit, connecting not less than five individuals, firms or corporations, to be used and carried on substantially the same as a private line. A social line has also been provided for to be used in a similar manner; and if telephones are desired for uses, and upon lines other than those mentioned in the agreement, they are to be obtained by special application from the defendant. Each of the telephones used in this manner also remains the property of the defendant, and the customers to be selected by the local company are to take a lease and license from the defendant only to be countersigned by the local company;

and the leases taken are to be transmitted to the defendant, and the rents and royalties reserved in the leases are to be collected by the local company and transmitted to the defendant, the latter having the right, as in other cases, to intervene and collect the rents for itself.

Another species of business has also been provided for in the way of connecting the exchange systems with the offices of the Western Union Telegraph Company. This is no part of the business of the local companies, but is that of the defendant itself. It has been authorized by the contract providing for the exchange system, to connect wires with the wires of the exchange system and the offices of the telegraph company, and to receive as its compensation for the business transmitted in this manner a certain proportion of the income or earnings of that business. And, as a matter of fact, it is agreed in the case that from this source it received, in 1882, $782.43; in 1883, $968.57; in 1884, $817.69; in 1885, $975.25, and, in 1886, $1,009.47. The wires used in this business are very short and of little value, costing for the whole State so far only the sum of $136.26.

From these facts, as they have been extracted from the case, it appears to follow that the local companies in the State are not taxable for the rentals payable to the defendant by its customers for the telephones. Those rentals are the earnings and property of the defendant entering, to the extent of the advantages reserved to the defendant, in no manner into the corporate capital or earnings of the local companies, as they are taxable under the statutes only upon their own capital and earnings. While they receive, as the business has been carried on, these rentals reserved to the defendant, they, in judgment of law, receive them under the agreements as the property of the defendant, for which they are to account and pay over the amounts to it; and these amounts are paid or transmitted to the defendant at its office in the city of Boston. But in letting and leasing the telephones, so far as the rental is reserved for the benefit of the defendant, they are rented by the local companies as its agent, the telephones remaining its property and subject to its control, direction and disposition at all times. This is more especially the case in the extra territorial lines connecting different exchange systems, and in private and club lines. They form no part of the exchange systems, but are substantially

the lines, and under the management, direction and control of the defendant; and they are no less in this condition because that management, control and direction has been and may be exercised through the local companies. In what they do in this respect, they do it under the authority of and for the defendant. And where one party acts in this manner for another, it acts for that other as his or its agent; and the business in which it acts is to the extent that it is under the management, control and direction of the other, the business of the party exercising or having the right to exercise this authority over it, and its rights are neither reduced nor qualified in this respect because it has committed the management, control and direction, to a great extent, to the judgment and discretion of the local company. That is a power frequently delegated to agents, and, in its exercise, the party having the delegated authority is acting for the party from whom the authority is acquired. Still more emphatically is this the case as to the private lines, club lines, social lines and speaking tubes; for, as to these, the leases are made directly between the defendant and the person or persons having the authority to use the telephones and establish such lines, and the rentals, so far as they are reserved by such leases, are the property of the defendant. And what the local companies have been authorized to do is to countersign the leases and receive such rentals, as long as the defendant does not elect to intervene and collect them for itself, and its duty is to account for them and transmit such rentals to the defendant. In this class of cases the business seems to be exclusively that of the defendant, performed through the intervention of the local companies for its own use, advantage and benefit. And in an equal degree is that true of the messages transmitted over the connecting wires extending from the exchange system to the offices of the Western Union Telegraph Company. As to this business and that of the private lines, club lines, social lines and speaking-tube telephones, there seems to be no reasonable ground upon which it can be held that it is the business of the local companies, and not the business of the defendant; and, upon the same principle, the rentals reserved to the defendant, for the use of its telephones in the exchange systems themselves, seem to be equally obtained from its business within the line of its management and control, although transacted for it by the local companies. That it permits

the local companies to receive the rentals, and afterwards account for and transmit them to the defendant, and to receive the telephones themselves from the defendant in the State of Massachusetts, does not materially change the relations existing between these different companies; for, so far as the rights, emoluments and rentals are reserved to the defendant through the intervention of the local companies, it is its business, transacted by means of what is no more than an agency, as that is defined and understood by the legal authorities. And that is sufficient to bring it within the liability to taxation created by the act of 1880, as that has been amended by the law of 1881; and, on that account, to distinguish it from the *United States* v. *American Bell Telephone Company* (29 Fed. Rep., 17).

The right to tax property and business within the limits of the State, beyond controversy appertains to the powers confided and vested in the State government. (*Providence Bank* v. *Billings,* 4 Pet., 514; *Charles River Bridge* v. *Warren Bridge,* 11 id., 420; *Case of State Tax,* 15 Wall., 300.) And this power of taxation, essential as it is for the support and maintenance of the government, is not to be impaired or reduced in its authority because of artificial and refined distinctions, having no real foundation for their support. Taxation is imposed as an equivalent, or by way of compensation, for the security and protection afforded to property and persons by the State; and the facts of this case bring it within this legal principle upon which the enactment of these statutes has proceeded, for not only the telephones themselves remaining at all times the property of the defendant, but these contracts through which its rentals are reserved, and in the case of the private lines and others made directly with itself, and the business carried on between the exchange systems and the Western Union Telegraph Company, are protected and secured in all the advantages issuing therefrom to the defendant, by the laws of this State, and for that protection and security, it should bear its share of the public burdens; and that it may be so held liable results from what was decided in the case of *People* v. *Equitable Trust Company* (96 N. Y., 387). In that case it was found, as a fact at the trial, "that at the time of the commencement of this action, and for eight years or more prior thereto, it had an office

in the city of New York, and was doing business in this state; that the executive committee of the board of trustees of said defendant held their meetings in the city of New York; that the greater part of the instructions for the management of said company are given from the said New York office, and nearly all the guaranteed obligations of said company are payable in said city." This was not considered by the court to be any great or extended portion of the business of the company, but was yet deemed to be sufficient to bring it within the statutes, under which the taxes are claimed from this defendant; and accordingly it was held by the court in that case that, notwithstanding the fact that the amount of its business done in this State was small, or inconsiderable, it was still within the statute and bound to pay the tax imposed upon it under the authority of these laws. The facts in the present case are more decidedly against the defendant than in the case which was then decided, for a large portion of its business has been carried on in this State, and from that business it has derived very large rentals, commissions and profits. Its rentals have increased from 1882, when they amounted to the sum of $164,356.94 to the sum of $296,239.67 in the year 1886, and from its extra-territorial and branch lines from the sum of $1,470.45 in 1882, to the sum of $6,522.77 in the year 1886. These earnings, as well as the commissions on the business with the Western Union Telegraph Company, have been derived and received under the force and effect of these contracts and from this property protected by the laws of the State, and managed, used and controlled by the defendant, through the intervention of the local companies, and plainly the defendant should contribute to the governmental expenses of the State the same sum, at least, that a local corporation formed and existing under its own laws would be obliged to contribute, for the enjoyment of the same privileges under the provisions of these and other statutes. Even more than that was sanctioned in the case which has just been mentioned, for the amount of the tax which the defendant there was required to pay was the statutory percentage upon the entire amount of its capital stock. While in this case the people have claimed to recover only such an amount under the percentage authorized by the statute, as will include the capital of the defendant employed in the business carried on by it in this manner

in the State of New York. The claim made by the case has been limited in this manner, together with the percentage, or penalty of ten per cent, allowed to be added by section 7 of the act of 1881, for default in payment.

It appears further, by the case, that the defendant has secured a dividend upon its capital employed in this State of ten per cent for the year 1882, increasing to sixteen per cent in 1885 and 1886. And it is accordingly liable on this capital to pay the percentage imposed for the privilege of doing its business in this State which has been prescribed and designated by section 3 of the act of 1881. In addition to that it has also, by section 6 of the same act, been rendered liable to pay a tax of five-tenths of one per cent upon its gross earnings in this State for the business here carried on by it. And that amount, in addition to the percentage fixed by the sixth section of the act, the people are entitled to recover together with this penalty of ten per cent.

It might very well be, under the case of the Equitable Trust Company, that the tax upon its capital could be calculated upon the entire capital of the company, but that has not been claimed by the people. They have gone no further than to insist upon the payment of the same percentage which is now, in terms, sanctioned and prescribed by chapter 501 of the Laws of 1885. And having limited by the case the claim in this manner, it cannot now exceed what it has been insisted the defendant should pay by way of taxation, because of its dividends. The amounts stated in the case under each section of the statute appears to be just, and the plaintiff is entitled to a judgment against the defendant for the aggregate sum of $34,478.90.

Brady, J., concurred.

Van Brunt, P. J. (dissenting):

This controversy has been submitted for the purpose of determining whether the defendant is liable to taxation in the State of New York as a foreign corporation doing business therein.

The statutes under which the plaintiff claims the right to collect the tax in question are those which were passed in the years 1880 and 1881, whereby foreign capital employed in business in the State of New York, and which received the same protection that is

extended to domestic capital, is compelled to contribute in the same manner to governmental support.

The provisions of section 3 of the Laws of 1880, as amended by the Laws of 1881, are that every corporation, joint-stock company or association whatever, now or hereafter incorporated or organized under any law of this State, or now or hereafter incorporated or organized by or under the laws of any other State or country, and doing business within this State, shall be subject to and pay a tax, as a tax upon its corporate franchise, into the treasury of the State, annually, a certain per centum upon dividends made and declared by it. Section 6 of the act provides that, "in addition to the taxes above provided for, every corporation formed for railroad, canal, steamboat, ferry, express, navigation or transportation purposes, and every elevated railway company, and every other corporation, joint-stock company or association, now or hereafter incorporated or organized by or under any law of this State, or now or hereafter incorporated or organized by or under the laws of any other State or country and doing business in this State, and owning, operating or leasing to or from any other corporation, joint-stock company or association, any railroad, canal, steamboat, ferry, express, navigation, pipe-line or transportation route or line, or elevated railway, or other device for the transportation of freight or passengers, or in any way engaged in the business of transporting freight or passengers, and every telegraph company or telephone company incorporated under the laws of this or any other State, and doing business in this State, and every express company or association, palace car or sleeping car company or association, incorporated or unincorporated, doing business in this State, shall pay to the State treasurer, for the use of the State, as a tax upon its corporate franchise or business in this State, a tax at the rate of five-tenths of one per centum upon the gross earnings in this State of said corporation or company or association." It will be seen, therefore, that, as far as the defendant is concerned, the question which determines its liability, under the provisions of this act, to taxation is entirely one of fact, namely : Does the corporation do business within this State within the meaning of the act ?

It is urged, upon the part of the plaintiff, that because the defendant has property within this State, which is being used by the lessees

thereof within this State, therefore, in some way, the territory, enterprise and prosperity of the people of the State are used by the defendant, and that the case comes within the spirit of the enactments hereinbefore cited. That a tax, such as is contemplated by section 3 of the act in question, is within the powers of the legislature seems to have been admitted in the case of the *People* v. *Equitable Trust Company* (96 N. Y., 387), which company was a Connecticut corporation, claimed to be doing business within this State, and which had been taxed upon its business in the manner provided by the said third section. It was held in that case "that the tax on the business of foreign corporations done in this State is a specific tax, and hence no apportionment or appraisal was required. Such a mode of taxation has been resorted to by all governments. It was extensively used by the Federal government during the late war, and at other periods of its history. A poll-tax is specific. The legislature can constitutionally impose the same poll-tax upon every citizen, without reference to his ability to pay. So it can impose a tax upon all watches, carriages, dogs, liquors, and other chattels, without reference to their value. On the same principle it can impose an arbitrary tax upon any avocation or business, without estimating its volume or value. It may impose a specific tax upon any saloon-keeper or hotel-keeper, or banker or broker, or trader; and for these views, sustained by the history of all governments, if any authority is needed, it is found in the case of *People ex rel. Griffin* v. *Mayor of Brooklyn* (4 N. Y., 419). Such taxes are generally arbitrary, unjust and unequal, and have been resorted to by governments in great financial straits. While they are free from constitutional objections, unless imposed *pro bono publico* to restrain, suppress or regulate some obnoxious trade or business, they must generally receive the condemnation of wise and enlightened statesmanship. The legislature, therefore, has the power to impose an arbitrary sum as a tax upon the business of all corporations done within the State, and no harm is done because this act apportions the tax, at least, according to the ability of the corporation to pay."

It will thus be seen that the power of the government of the State of New York to levy a tax upon the business of any foreign corporation engaged in business within the State, has been expressly

recognized and is not now open for discussion. In the case to which attention has been called, the question arose as to whether in the case of a foreign corporation there was any method of apportioning the tax. Upon this question the court say: "We find no authority in this act for apportioning the tax upon such a corporation as this according to the amount of dividends earned in this State, or according to the amount of capital employed in this State, and hence the defendant, if liable for any of this tax, cannot complain of the amount thereof." But in the case then under consideration the court was precluded from discussing the question as to whether the corporation, within the meaning of the act, did business within this State because it appeared from the record that it was admitted that the corporation in question did business within this State within the meaning of the act. The court refrained from discussing that question, and only determined the liability of the corporation to taxation under these circumstances. It follows, from the principles and rules laid down in that case, that if the defendant in this action did business within this State within the meaning of this act, it is liable for the full tax provided for by the third section thereof. The court, however, in the language which was used in incidentally referring to the meaning of the words in the statute, "doing business within this state," clearly indicated its opinion that, when the act provided as the measure of the tax the amount of dividends earned by the entire business of the corporation, or the entire cash value of its capital stock, that the statute meant in its use of the words, "its corporate business," substantially the whole or the main corporate business which it was chartered to prosecute. It is evident that this construction was placed upon the act because of the magnitude of the tax which would otherwise be imposed upon the corporation even if the smallest amount of business was transacted by the corporation within this State under any other construction of the words in question.

After the decision of this case, the legislature, appreciating the justice of the construction, and of the criticism which had been passed by the Court of Appeals upon the act then under consideration, in 1885 amended the act so as to meet the suggestions contained in the decision of the Court of Appeals, and provided that instead of a corporation being taxed upon the whole amount of its dividends

earned, or the entire cash value of its capital stock, if it did any business within the State; that the amount of the capital stock which should be the basis for taxation under the provisions of section 3 of the act in question should be the amount of capital stock employed within this State.

It is clear that under the act, as it originally stood, the whole or the main corporate business of the defendant was not transacted within this State, and, therefore, it was not liable to taxation upon its business as provided by section 3 of the act. The defendant is a foreign corporation, organized under the laws of Massachusetts. It has its office in the State of Massachusetts, and it rents certain property which is manufactured in Massachusetts and owned in Massachusetts, namely, telephone receivers and transmitters, to corporations organized under the laws of the State of New York, for use by such corporations in the State of New York in the conduct of their business. The rents reserved for the use of this property are to be paid in Massachusetts, the property itself is delivered in Massachusetts, and the property is used within the State of New York entirely by the servants, agents and employees of the New York corporations.

There is one branch of this business, however, which is to be distinguished from this, in that the lessors of the property are the American Bell Telephone Company, and the lessees are the persons using the instruments, and the rent is to be paid directly to the defendant. It is true that, in practice, this rent is collected by the New York corporation, but the contracting parties are the users of the instrument and the defendant. The defendant, therefore, is the owner of property within the State of New York, from which it derives rental, and which is rented for the purpose of being used in the State of New York. It is certainly, therefore, doing some business within the State of New York under their lease with the subordinate corporations. It has the most minute supervision of the instruments leased; it regulates the conduct of the business in very minute particulars, and provides for the efficient service by those instruments, whereby the use of the same may be extended and the demand therefor increased.

It is urged that, because the defendant has no agent, servant or

employee within this State, except as has been mentioned, that, therefore, it is transacting no business within the State. As far as the instruments leased by the defendant to the individual users are concerned, it certainly is directly carrying on business within this State. But all this does not bring the business of the defendant within the rule suggested in the case cited, because it is by no means the whole or the main corporate business which the defendant was chartered to transact. It is, therefore, apparent that, under the rule laid down in the case cited, the defendant was not taxable prior to the amendment of the act of 1885. We think, however, that from that time it was. A change was manifestly made by the amendment in question in reference to the taxation of foreign corporations. The judicial interpretation enunciated in the decision in question had evidently been called to the attention of the legislature, and the injustice of taxing a foreign corporation upon the whole of its dividends earned, or the entire cash value of its capital stock, even if it did but a small portion of its business within this State, recognized, and therefore, the amendment of the act passed in 1885 (being chapter 501 of the laws of that year) was adopted.

This legislation clearly shows that it was the intention of the legislature to impose the tax provided for by section 3 of the original act upon all foreign corporations who did any business within this State, no matter whether such business formed the whole or the main corporate business of such corporation, or a small or infinitesimal part thereof. To the extent that the corporation did business within this State, to that extent should its capital stock be taxed. Applying this change in legislation to the facts appearing upon this submission, it would appear, therefore, that the defendant was liable to taxation upon so much of its capital stock as was employed within this State. It did some of its business within this State, as has already been seen, and thus it rendered itself liable to taxation under this new legislation, and it cannot legally escape for the reason that the main part of its corporate business is done elsewhere. We are of opinion, therefore, that since the passage of the act of 1885 the defendant has been doing business within this State within the meaning of the statute as amended, and is liable for the tax upon its business, to be assessed upon the amount of its capital stock employed within this State, and is also liable to taxa-

tion upon its gross earnings in this State. These earnings are the rentals which are received by the defendant from the leasing of its property situate within this State.

. The apportionment of the tax upon the capital stock is necessarily more difficult and uncertain, but a fair and reasonable rule for guidance would be to ascertain the ratio which the number of telephones used within this State bears to the whole number of the telephones used in the country, the entire capital of the defendant being engaged in the telephone business throughout the Union, and the value of such capital depending largely upon patents which secure the right to use the apparatus owned by the defendant, it is impossible to apportion precisely the proportions of these patents which are used in the telephone business in the State, otherwise than by measuring the same according to the ratio just mentioned.

Judgment ordered as directed in opinion of DANIELS, J.