People ex rel. Crowell et al. *v.* Lawrence et al.

Mason, J. This case comes here by appeal from a judgment of the Supreme Court, rendered upon a return to a certiorari, made by the commissioners appointed under an act of the legislature, passed April 19, 1859, entitled "An act to provide for the closing of the entrances of the tunnel of the Long Island Railroad Company, in Atlantic street, in the city of Brooklyn, and restoring said street to its proper grade, and for the relinquishment, by said company, of its right to use steam power within said city." This return brings before us for review, the proceedings had to assess certain sums upon the lands of the relators, and the relators claim and insist that the said assessments are illegal, by reason of the unconstitutionality of the law under which said assessments were made. If this act of April 19, 1859, is a valid law, these assessments are legal, and the judgment of the Supreme Court must be affirmed, without reference to the act of March 23, 1860, which authorizes an assignment of the assessments to the Long Island Railroad Company, and the collection thereof by the said company. (Laws 1860, chapter 100.)

The last mentioned act authorized the commissioners, appointed under the act of April 19, 1859 (Laws 1859, chapter 454), to assign the assessments made by them, pursuant to the first named act, to the Long Island Railroad Company, or their assigns, provided the latter would receive the same in lieu of money, and in satisfaction of the amount to be paid

them according to the agreements and provisions of the act of 1859. This act of 1860 authorized the Long Island Railroad Company to appoint a collector, who should possess all the powers belonging to a collector appointed by the said commissioners, as provided in the act of April 19, 1859.

The return of the commissioners in this case shows that an assignment of the assessments to the Brooklyn and Jamaica Railroad Company, who have succeeded by purchase to all the rights and property of the Long Island Railroad Company has been duly made. It does not appear from the return, that any collector has been appointed, or what, if any, steps have been taken for the collection of the said assessments. I do not deem it very material to inquire into the legality of the provisions of the act of March 23d, 1860, providing for the mode of collecting these assessments, if the assessments as originally made by the commissioners under the act of April 19, 1859, shall be found to be legal and valid.

The authority and direction to assign these assessments contained in the act of 1860, certainly could not invalidate the assessments already legally made by the commissioners under the act of April 19, 1859.

The validity of these assessments are properly before us on this return of the commissioners to the certiorari, and we will proceed to consider them, so far as the return itself presents them. It is proper to observe in this connection, that we cannot go out of the return itself, as that must control as to the facts upon which our judgment must be pronounced.

The return presents no question whether a majority of the owners of land in the district to be assessed, petitioned for the appointment of commissioners or not. These proceedings were had before the Supreme Court, in Special Term, and that court have decided that a majority had petitioned, and the return of the commissioners affirms that such was the case. There is nothing in the return to show the contrary, and we must assume, therefore, that the order appointing the commissioners was made on the petition supported by a majority of the land owners in the district.

It is claimed and insisted by the appellants, that this act of April 19, 1859, is unconstitutional, because it is in conflict with the sixteenth section of the third article of the Constitution, which declares that "*no private or local bill which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title.*" This act is not obnoxious to this objection. It embraces but one subject. It provides for changing this steam railroad and the tunnel through Atlantic street into a surface horse railroad; and as a part of this very subject, the owners of this steam railroad and franchise must of necessity be compensated for surrendering the same, and the means raised to make the compensation, and provision made for the substituted horse railroad. The title of this act sufficiently expresses this object, and there is really but one subject embraced in the act, within the spirit and meaning of this constitutional restriction. This constitutional restriction does not require that the title of an act shall specify all its provisions. The title to this act sufficiently expresses the subject within the rule laid down in several adjudged cases, and does not embrace but one subject. (*Brewster* v. *The City of Syracuse et al.*, 19 N. Y. R., 116; *The People* v. *McCann*, 16 N. Y. R., 58; *The Sun Mu. Ins. Co.* v. *The Mayor, &c.*, 4 Seld. R., 241; *Conner* v. *The Mayor, &c.*, 1 Seld. R., 28.) These cases hold, in strict accordance with the language of this section, that it is only necessary that the title express the subject of the act and not the provisions of the act or the details, by which the objects of the act are to be accomplished.

The objection that this act is unconstitutional, because it authorizes the taking of private property for a use not sanctioned by the Constitution, cannot be sustained. The exercise of the right of eminent domain is not in the case. These commissioners were duly authorized to enter into an agreement with this railroad, for the surrender of their franchises and road, on condition that the company should be willing to make a contract; and as they were willing, and voluntarily entered into the arrangement, they cannot complain. These

relators certainly cannot raise an objection of this kind,' which the railroad itself had the right to waive, and which it has waived, and with which the railroad itself seems to be perfectly satisfied. So far as this act affects the Long Island Railroad Company, that corporation alone can raise objections to the provisions of this act. (*The People* v. *Murray*, 5 Hill R., 468; *Baker* v. *Brandon*, 6 Hill R., 47; *Sinclair* v. *Jackson*, 8 Cow. R., 543; *Embury* v. *Conner*, 3 Coms. R., 523, 511.) All of the objections which the relators have raised, or can raise to the validity of this act, involve merely the exercise of the taxing power by the legislature, and there is really no question raised by the relators on this appeal, which has not been virtually decided against them by this court. It was held in the case of *The People ex rel. Griffin* v. *The Mayor, &c., of N. Y.*, that the two clauses of the Constitution which declare that no person shall be deprived of his property without due process of law, and that private property shall not be taken for public use without just compensation, have no application to the exercise of the taxing power. (4 Coms. R., 419, 423.) It was also decided in that case, that the power to tax implies a power to apportion the tax as the legislature shall see fit, and that the power of apportionment has no limit, where there is no constitutional restriction. That there is nothing in the Constitution of this State, which requires that taxation shall be general, so as to embrace all taxable persons in the State, or within any district or territorial division of the State, or that it shall be equal, or that it shall be in proportion to the value of the property of the person taxed, or that it shall not be apportioned according to the benefit which each tax-payer is supposed to receive from the object on which the tax is expended. The case holds in short, that the remedy against unwise or unjust modes of taxation is to be sought from the legislative department of the government and not from the judicial.

Many of the views above expressed, are affirmed in the case of *Brewster et al.* v. *The City of Syracuse* (19 N. Y. R., 116), and also in the case of *The Town of Guilford* v. *The Board*

*of Supervisors of Chenango County, et al.* (3 Kern. R., 143). It was held in the former of these cases, that the legislature has the power to authorize the levy of a tax for the purpose of paying to one who had constructed a municipal improvement, an addition to the contract price, which the corporation was forbidden to pay by its charter. The case of *The Town of Guilford* v. *The Supervisors of Chenango County,* holds that the legislature have the power to levy a tax upon the taxable property of a town, to meet a claim made against the town, although there is no legal obligation on the part of the town to pay such claim, and although the town had rejected the claim, and in a suit against the town, it had been legally determined that the town was not liable to pay such claim. In the case of *Thomas* v. *Leland and others* (24 W. R., 65), it was held that an act of the legislature, imposing a tax upon a local district of the State in reference to a public improvement, is valid, notwithstanding that previous to the passage of the act, a number of individuals of such district had entered into a bond to the State, by which they bound themselves to pay the whole expense of the improvement. Several of the principles above stated, were reaffirmed in this court in the case of *Howell* v. *The City of Buffalo* (4 Transcript Appeals R., 505), and in the Supreme Court of the United States, in the case of *The Providence Bank* v. *Billings* (4 Peters R., 514). The settled principles to be deduced from these cases are, that the sovereign power of taxation is lodged in the legislature ; that the power of taxing and the power of apportioning taxation are identical and inseparable ; that there is no constitutional restraint upon the exercise of this power ; that the right of determining what portion of the public burdens, by way of taxation, shall be borne by any individual or class of individuals, must be determined by the legislature; that however much this power may be abused by the legislature, the only check upon it is the responsibility of the legislative body to its constituents. As taxation is undisputably a legislative power, and as the Constitution contains no restriction upon the taxing power of

the legislature, redress against unjust taxation must be sought in the same way, and no other, as redress against unjust and oppressive legislation, in the general enactment of laws, is sought. The judicial department of the government can afford no redress in such cases. Applying these principles to the case at bar, no doubt can be entertained that the relators have mistaken their remedy in seeking redress in this case from the courts, against the imposition of this tax upon their property. The statute under consideration is not obnoxious to the objections urged in several of the cases, to which we have referred. This assessment was made for a public object, for a public improvement of the street. That object was the removal of an injurious and dangerous mode of using the street for a railroad to be run by steam, and the substitution of a horse railroad in its stead ; embracing, also, the filling up of an objectionable tunnel in the street. These were purposes of public interest to this part of the city, and the legislature, and not the courts, are constituted the judge of the advantages to the owners of property on the street, and can alone provide for the apportioning of the tax to meet the expense of the improvement. There is nothing in the objection that only two of the commissioners signed the report. The statute expressly authorized two to act for the whole. The only question here, is the validity of the assessment. The mode of appointing a collector and the transfer of the assessment, need not, therefore, be considered.

The act relating to local improvements in the city of Brooklyn (Laws 1861, p. 462) does not repeal these acts of 1859 and 1860, under consideration. This act of 1861 applies only to work done by the common council, or under their direction, in the ordinary administration of the municipal affairs of the city. The judgment of the Supreme Court should be affirmed.

All the judges concurring except Lott, J., who did not vote.

Judgment affirmed.