THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, APPELLANT, *v.* THE CITY OF DUNKIRK, RESPONDENT.

THE LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY COMPANY, APPELLANT, *v.* THE CITY OF DUNKIRK, RESPONDENT.

*Assessment — against a railroad for paving, proportioned to the part of the street used by it — is not unconstitutional — charter of Dunkirk — what is a "majority vote of the common council" — when an assessment becomes a claim against the owner personally — counter-claim.*

In actions brought by railroad corporations to restrain the collection of an assessment for paving a city street, it appeared that the railroads occupied about one-half of the width of the street paved.

The city charter, under which the assessment was laid, provided that in estimating the benefit from paving upon a street where a railroad ran, the company owning the railroad should be estimated to be benefited in such proportion as its tracks and usage of said street might bear to the whole width of the street and be assessed proportionately.

*Held*, that the provision was not unconstitutional as discriminating against a particular class of property.

That the legislature had absolute authority over the subject of taxation, and that as a corporation was a creature of the statute the legislature might impose upon it burdens additional to those prescribed by its charter.

That, upon a fair construction of the provisions of the charter of the city of Dunkirk (chap. 479 of the Laws of 1867, as amended by chapter 19 of the Laws of 1880), no publication was required of a preliminary resolution of the common council declaring an intention to pave, nor need any opportunity be given to file preliminary objections thereto, nor hearing be given to the objectors.

The city charter provided that such an improvement should be made by a resolution adopted " by a majority vote of the common council; " and also directed that the mayor preside over the common council, and authorized him to vote in case of a tie. The common council being evenly divided upon the question as to whether the street should be paved, the mayor voted in favor of the resolution.

*Held*, that the resolution was adopted by a majority vote of the common council.

The city charter further provided, that in the estimate of benefits the railroad company should be deemed to be benefited by the paving " in such proportion as its tracks and usage of said street may bear to the width of the whole street."

*Held*, that the provision meant that the benefit to the railroad company should be held to bear the same proportion to the entire benefit of the improvement as the width of that portion of the street occupied by the railroad bore to the entire width of the street.

The city charter further provided that all taxes and assessments should, after a certain time, bear interest, and that "such tax, with the interest," might be sued for and collected by the city against any person liable therefor.

In this action, brought to restrain the collection of the assessment, the defendant in its answer set up the assessment proceedings and demanded judgment for the amount of the assessment, and recovered judgment therefor.

*Held*, that, under the provision of the charter, this was proper.

That the assessment thereby became a personal charge against the taxpayer, and ceased to be merely a lien on the property, collectible by proceedings *in rem* only.

APPEAL by the plaintiff, the New York, Lake Erie and Western Railroad Company, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Chautauqua on the 26th day of April, 1891, upon a recovery for the defendant of $3,937.05, the complaint having been dismissed after a trial by the court at the Erie Special Term; and also an appeal by the plaintiff, the Lake Shore and Michigan Southern Railway Company, from a judgment

of the Supreme Court, entered in the office of the clerk of the county of Chautauqua on the 20th day of April, 1891, in favor of the defendant for the sum of $7,835.38 and costs, after a trial by the court at the Erie Special Term.

The two above-entitled cases were decided together, and in each case the city set up in its answer certain assessment proceedings, to restrain the defendant from collecting which these actions were brought, and demanded judgment for the amount of the assessment.

*D. H. McMillan*, for the New York, Lake Erie and Western Railroad Company, appellant.

*G. F. Brownell*, for the Lake Shore and Michigan Southern Railway Company, appellant.

*W. D. Holt*, for the respondent.

DWIGHT, P. J.:

The tracks of both the plaintiffs' roads run longitudinally through Third street, in the defendant's city, and, together, occupy about one-half the width of the street in the middle. The assessment in question was laid to meet the expenses of paving that portion of the street lying south of the railroad tracks and between certain limits east and west, under a provision of the charter of the city which, so far as it relates to this particular subject, is in the following terms:

" For the purpose of making assessments under this title the property * * * adjoining that part of the street so * * * paved * * * shall be taken to be the only property benefited by such improvement; * * * and in estimating the benefit from any such paving * * * or any street along which a railroad is running or using a part thereof, the company owning such railroad shall be estimated as benefited by such paving * * * in proportion as its tracks and usage of said street may bear to the width of the whole street, and be assessed for such work proportionately thereto." (1880, chap. 19, § 16.)

The assessment of the plaintiffs is assailed on several grounds, one of which relates to the constitutionality of the above provision, and others to its construction, and to the mode of application of this and other provisions of the charter of the defendant.

The constitutional objection may be broadly stated to be to the effect that the provision arbitrarily discriminates against a particular class of property, and fixes an arbitrary measure of its assessment without regard to the actual benefit received. The argument of learned counsel for the plaintiffs, respectively, in support of this objection is elaborate and instructive, but we do not feel at liberty to follow it to the conclusion to which it points, in view of the many decisions of the courts of our own State which recognize the complete and well nigh absolute authority of the legislature over the subject of taxation. Such are the cases of the *People ex rel. Crowell* v. *Lawrence et al.* (41 N. Y., 137); *In the Matter of Van Antwerp* (56 id., 261); *Spencer* v. *Merchant* (100 id., 587).

Moreover, on the principle that corporations, which are creatures of the legislature, should be still subject to its control, which, at the time of the revision, was enacted into a statute (1 R. S., 600, § 8), it was competent for the legislature to lay upon the plaintiffs a burden which was additional to those prescribed by their charters. (*Albany Northern R R. Co.* v. *Brownell*, 24 N. Y., 345, overruling *Miller* v. *N. Y. and E. R. R. Co.*, 21 Barb., 513; *Boston and Albany R. R. Co.* v. *Greenbush*, 52 N. Y., 510; *People ex rel. Kimball* v. *B. and A. R. R. Co.*, 70 id., 569.) Under the doctrine of these cases it seems clear that the requirement of the statute in question, to the effect that the railroad companies occupying portions of the streets in the city of Dunkirk should bear a portion of the expense of paving such streets, was within the authority of the legislature, and that the share of the expense to be thus borne was within its discretion.

It is further objected that the assessment in question is invalid, because certain provisions of the charter of the defendant relating to the subject-matter were not complied with. Those provisions are found in section 1 of title 12 of that act, being chapter 479 of the Laws of 1867, as amended by chapter 19 of the Laws of 1880. The section as amended reads in part as follow:

"Sec. 1. Whenever the common council may deem it necessary to construct a sewer in any street, to grade, pave, macadamize or plank any street or part of a street in said village it is hereby authorized to declare by resolution its intention so to do and to take all

necessary steps for doing said work as provided in sections 2 and 3 of title 12, and in section 2 of title 13 of this act, and to order said work to be done and to let the contracts therefor by a majority vote of said common council."

Several blunders occurring in this section are due to the fact that the enactment was in the form of an amendment to the charter of the village of Dunkirk (act 1867, chap. 479), and that there was an attempt to consolidate certain sections of the act amended, relating to different subjects. Thus, of the amended statute, title 12 was entitled "Construction of sewers," and related solely to that subject, while title 13 was entitled and related solely to the "grading and paving of streets." Title 12, by its sections 1, 2 and 3, required a preliminary resolution of intention of the board of trustees, specifying the location and dimensions of the proposed sewer, to be published for two weeks in the village paper; an opportunity to every person interested to file written objections to the project and a hearing of such objections before the sewer should be ordered to be built. Title 13, in its only sections 1 and 2, contained no provision for the adoption or publication of any preliminary resolution, nor for the filing or hearing of objections, but (by section 1), gave to the board of trustees the authority to order the grading or paving of streets by the vote of two-thirds of its members; and (by section 2) to assess the costs of such improvements according to benefits, to be determined by assessors specially appointed for that purpose. The act of 1880, which, as we have said, was a mere amendment of the act of 1867 and accomplished the transformation of the village into a city, of the president into a mayor, of the board of trustees into a common council by the mere change of reading of the several names wherever they occurred in the statute amended — undertook to consolidate the provisions in respect to the construction of sewers with those relating to the grading and paving of streets, and the result was the amended section 1 of title 12, a portion of which is last-above quoted. Some of the confusion which has arisen in this case results from this awkward manner of amendment and abbreviation; but it is reasonably clear that sections 2 and 3 of title 12 of the village charter, if they continue in force at all under the general repealing clause of the act of 1880, continue so in force only in respect to the construction of sewers and have no application to the

subject of the grading and paving of streets; and that the only provisions of the act of 1867 referred to in the amended section 1 of title 12, which apply to the last-mentioned subject, are those of section 2 of title 13 of the act amended.

Such being the case, it is apparent that, for the purpose of the paving of Third street in the city of Dunkirk, no publication was required to be made of the preliminary resolution of intention, nor opportunity to file objections thereto, nor hearing given to such objections; but that it was only necessary that the improvements should be ordered by a majority vote of the common council, and that the cost of the improvement should be assessed upon the property benefited, according to the benefits received as determined by assessors appointed for that purpose; with the proviso in respect to railroad property, which was quoted at the outset of this opinion, and which was added to section 1 of title 12 of the act, by the amendment of 1880.

An objection to the proceedings in question, which is suggested by a request to find on the part of one of the plaintiffs, though not argued on this appeal, viz., that the statute required the appointment of two sets of assessors, one to ascertain and determine the cost and expense of the work, and the other to determine what property was benefited thereby, and to assess the cost upon such property in proportion to benefits, was based upon a manifest clerical error in engrossing section 2 of title 3, by which certain words of the section were repeated. The section, as properly read, plainly shows that the cost of the work was to be ascertained and determined by the common council.

Another objection to the validity of the assessment is to the effect that the resolution ordering the work to be done was not adopted " by a majority vote of the common council," as required by the terms of section 1 of title 13 of the act as amended. The facts upon which this objection is based are as follows: The common council of the city of Dunkirk consisted of eight councilmen (title 3, § 2); the mayor presides at their meetings, and is entitled to a vote when there is a tie in the vote of the councilmen (title 5, § 1); at the meeting of the common council at which the resolution in question was adopted, all the eight councilmen were present; the mayor, also, was present and presided; the vote of the councilmen on the

resolution was four in favor of, and four against its adoption, and the mayor thereupon voted in favor of the resolution and declared it adopted. We can have no doubt of the correctness of this declaration, nor that the vote thus declared was, within the meaning of the statute, "a majority vote of the common council." It is true the mayor is not declared to be a member of the common council, but he is its presiding officer, and in the case of a tie has a vote as such, and that vote determines the vote of the common council. So, as pointed out by counsel for the respondent, the Vice-President of the United States is not a member of the Senate, but he is its presiding officer, and has a vote in the case of a tie. (U. S. Const., art. 1, § 3, sub. 4.) That a vote of the Senate of the United States, determined by the casting vote of the Vice-President, is a majority vote of the Senate admits of no question. The case is the same with the Senate of this State (N. Y. Const., art. 4, § 7), and both are precisely parallel with the case under consideration. Each of the votes supposed, and the vote in question, is a vote of the body in which it is taken, and is determined to be the vote of a majority of that body by the casting vote of its presiding officer. The case would probably have been otherwise had the provision required the vote of a majority of the *councilmen* present or elected.

The language of the statute which prescribes that, in the estimates of benefits, the railroad company "shall be estimated as benefited by such paving, etc., in proportion as its tracks and usage of said street may bear to the width of the whole street," though, perhaps, not altogether well chosen, is sufficiently intelligible, and seems to us to admit of but one construction. Plainly, it intends that the benefit to the railroad company shall be held to bear the same proportion to the entire benefit of the improvement, as the width of that portion of the street occupied by the railroad bears to the entire width of the street; and it was in this proportion that, as we understand, the several assessments to the plaintiffs were made.

Upon the whole, we find none of the plaintiffs' objections to the statute in question, nor to the mode of its application in this case, to be well founded. It follows that the plaintiffs' complaints were properly dismissed.

But it is objected that the defendant was not entitled to have an affirmative judgment on its counter-claim against the plaintiff for

the amount of the assessment. The contention is that an assessment for a local improvement, as distinguished from a general tax, cannot, by any means, be made a personal charge against the taxpayer, but is only in the nature of a lien upon the specific property assessed, and that proceedings for its collection are confined to proceedings *in rem*, and authorities are cited to that general effect. (Cooley on Taxation, 675 ; *Neenan* v. *Smith,* 50 Mo., 525, 528.)

But here the particular statute under which this assessment was laid comes to the aid of the defendant. Section 1 of title 19 of the charter of Dunkirk, as revised, after providing that "all general taxes and assessment  *  *  *  and all taxes and assessments made by the common council of the city of Dunkirk" shall be alike liens upon the real estate assessed, proceeds as follows : "And all the taxes and assessments, whether for general or local or special purpose, which shall remain unpaid for the space of ninety days after the date of the first warrant annexed to the roll thereof, shall bear interest at the rate of seven per cent per annum from that time ; and such tax, with the interest, may be sued for and collected by the city against any person liable therefor in any of the courts of this State ; and the common council of said city is hereby empowered to bring actions in the name of the city for such collection."

There can, we suppose, be no question but that the words "such tax," in the last clause of the section, refer to and comprehend "all the taxes and assessments" mentioned in the preceding clause ; and such being the case there would seem to be no room here for the above contention, on general principles, against the recovery of a personal judgment for a local assessment.

The judgment appealed from seems not to be obnoxious to any of the objections taken by the appellants, and must, therefore, be affirmed.

MACOMBER and LEWIS, JJ., concurred.

Judgment in each case appealed from affirmed, with costs.