## GUBNER v. McCLELLAN, Mayor, et al.

(Supreme Court, Appellate Division, First Department.    March 12, 1909.)

1. STATUTES (§ 105*)—SUBJECTS AND TITLES OF ACTS.

Const. art. 3, § 16, providing that no private or local bill shall embrace more than one subject, which shall be expressed in the title, was designed to prevent the grouping of separate matters in a single local or private bill, and to prevent the title misleading the Legislature and the public.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 117; Dec. Dig. § 105.*]

2. STATUTES (§ 77*)—"LOCAL ACT."

A "local act" is one confined to a particular municipality or particular part of the state.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 79; Dec. Dig. § 77.*

For other definitions, see Words and Phrases, vol, 5. pp. 4208–4213.]

3. STATUTES (§ 77*)—"PRIVATE BILL."

A "private bill" applies only to individuals or corporations, and not to municipalities.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 79; Dec. Dig. § 77.*

For other definitions, see Words and Phrases, vol. 6, pp. 5567–5569.]

4. STATUTES (§ 106*)—SEVERAL SUBJECTS—GENERAL LAW.

There is no constitutional objection to embracing several separate matters in a general, as distinguished from a private or local, bill.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 119, 120; Dec. Dig. § 106.*]

5. STATUTES (§ 106*)—NATURE—GENERAL LAWS—TITLE.

Public Service Commissions laws (Laws 1907, p. 889, c. 429), creating commissions to regulate certain public service corporations is a general, and not a local or private, act, and hence is not within Const. art. 3, § 16, providing that no local or private act shall embrace more than one subject, etc.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 119, 120; Dec. Dig. § 106.*]

6. STATUTES (§ 107*)—PLURALITY OF SUBJECTS—"LOCAL ACT."

An act providing for the accomplishment of an object and providing means for payment therefor does not contain two subjects, and hence the provision of the Public Service Commissions law (Laws 1907, p. 889, c. 429) for payment of salaries and expenses of the commission for the First district by New York City does not constitute a local act joined with general legislation, within Const. art. 3, § 16, providing that no local act

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

shall embrace more than one subject, etc.; such provision being a matter of apportionment, within the Legislature's taxing power.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 126–128; Dec. Dig. § 107.*]

7. TAXATION (§ 296*)—APPORTIONMENT—LEGISLATIVE DISCRETION.

The apportionment of taxation for public purposes is within the Legislature's discretion.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 470; Dec. Dig. § 296.*]

8. STATUTES (§ 119*)—TITLE—CONFORMITY TO SUBJECT-MATTER.

The several provisions of the Public Service Commissions law (Laws 1907, p. 889, c. 429), entitled "An act to establish the Public Service Commissions and prescribing their powers and duties, and to provide for the regulation and control of certain public service corporations and making an appropriation therefor," are germane to the title.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 164; Dec. Dig. § 119.*]

9. MUNICIPAL CORPORATIONS (§ 860*)—INDEBTEDNESS—CONSTITUTIONAL LAW.

The provision of the Public Service Commissions laws (Laws 1907, p. 889, c. 429) for the payment of salaries and expenses of the commission for the First district by taxation upon New York City does not involve the creation of indebtedness, and hence is not within Const. art. 8, § 10, preventing municipalities from incurring indebtedness for other than municipal purposes.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1815; Dec. Dig. § 860.*]

Appeal from Special Term, New York County.

Action by Adolph C. Gubner against George B. McClellan and others. From an order denying an injunction, plaintiff appeals. Affirmed.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

John Leary, for appellant.

George S. Coleman (John F. Dillon, on the brief), for respondent the Public Service Commission.

CLARKE, J. This is a taxpayer's suit to restrain the mayor, comptroller, and chamberlain of the city of New York from paying to the Public Service Commission of the First district, or to any person at its direction, the moneys required to be appropriated and paid by section 14, c. 429, p. 897, of the Laws of 1907, upon the ground that any such payments would be illegal official acts and a waste of the funds of the city. Plaintiff applied upon the summons and complaint for an injunction pendente lite. The application was denied. From the order entered thereon, plaintiff appeals.

The complaint attacks the constitutionality of the Public Service Commissions law, being chapter 429, p. 889, of the Laws of 1907, entitled, "An act to establish the Public Service Commissions and prescribing their powers and duties, and to provide for the regulation and control of certain public service corporations and making an appropriation therefor." The complaint presents fourteen alleged violations

of the state Constitution, and objections under three separate provisions of the federal Constitution.

The appellant has argued upon this appeal but two of the constitutional questions so raised: First, that the act offends section 16, art. 3, of the state Constitution, which provides that "No private or local bill which may be passed by the Legislature shall embrace more than one subject, and that shall be expressed in the title;" and, second, that portion of section 10, art. 8, of the Constitution of the state which provides that, "Nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes." We confine our consideration, therefore, to the questions so presented upon this appeal.

First. Section 14 of the act provides as follows:

"(1) The salaries of the commissioners, the counsel to the commission, and the secretary to the commission in the First district shall be audited and allowed by the State Comptroller, and paid monthly by the State Treasurer upon the order of the Comptroller out of the funds provided therefor. All other salaries and expenses of the commission of the First district shall be audited and paid as follows: The board of estimate and apportionment of the city of New York, or other board or public body on which is imposed the duty and in which is vested the power of making appropriations of public moneys for the purposes of the city government shall, from time to time, on requisition duly made by the Public Service Commission of the First district, appropriate such sum or sums of money as may be requisite and necessary to enable it to do and perform, or cause to be done and performed, the duties in this or in any other act prescribed, and to provide for the expenses and the compensation of the employés of such commission, and such appropriation shall be made forthwith upon presentation of a requisition from the said commission, which shall state the purposes for which said moneys are required by it. * * * It shall be the duty of the auditor and comptroller of said city, after such appropriation shall have been duly made, to audit and pay the proper expenses and compensation of the employés of said commission, other than its counsel and secretary, upon vouchers therefor, to be furnished by the said commission, which payments shall be made in like manner as payments are now made by the auditor, comptroller or other public officers of claims against and demands upon such city; and for the purpose of providing funds with which to pay the said sums, the comptroller, or other chief financial officer of said city, is hereby authorized and directed to issue and sell revenue bonds of such city in anticipation of receipt of taxes and out of the proceeds of such bonds to make the payments in this section required to be made. The amount necessary to pay the principal and interest of such bonds shall be included in the estimates of moneys necessary to carry on the business of said city, and shall be made a part of the tax levy for the year next following the year in which such appropriations are made. * * *

"(2) All salaries and expenses of the commission in the Second district shall be audited and allowed by the State Comptroller and paid monthly by the State Treasurer upon the order of the Comptroller, out of the funds provided therefor."

The argument is that the provision requiring the city to pay the expenses and salaries of the employés of the commission for the First district, other than its counsel and secretary, makes this act a local bill; that thereby the act embraces more than one subject and a subject not expressed in its title, and so violates section 16, art. 3, of the Constitution. That constitutional provision was designed to remedy and prevent two legislative evils: (1) The grouping of two or more separate matters in a single private or local bill; and (2) the failure to express in the title of the bill the single subject to which it relates.

"The purpose of the sixteenth section was that neither the members of the Legislature nor the public should be misled by the title, not that the latter should embody all the distinct provisions of the bill in detail." Sun Mutual Ins. Co. v. New York, 8 N. Y. 241.

"The degree of particularity with which the title of an act is to express its subject is not defined in the Constitution, and rests in the discretion of the Legislature. * * * An abstract of the law is not required in the title." Brewster v. City of Syracuse, 19 N. Y. 117.

"The learned counsel for the appellant insists that the act of 1866 (Laws 1866, p. 818, c. 367) is unconstitutional, saying, 'Its title does not express its title'. It is 'An act relative to the powers and duties of the commissioners of Central Park,' and a careful scrutiny. of its provisions has not enabled us to discover in what respect—having in mind repeated decisions in answer to such objections—the title could be improved. It expresses a general object, and it must now be considered as the settled rule of construction that where such is the case all matters fairly and reasonably connected with it, and all measures which will or may facilitate its accomplishment, are proper to be incorporated in the act and are germane to the title. People v. Briggs, 50 N. Y. 553; In re Mayer, 50 N. Y. 504; In re Department of Public Parks, 86 N. Y. 437; In re Upson, 89 N. Y. 67; Water Com'rs of Clinton v. Dwight, 101 N. Y. 9, 3 N. E. 782. Those now before us are strictly within this rule. The provisions of the act, if literally applied, would include no matter not intrusted to the commissioners, nor any subject over which they are not by terms given jurisdiction. Each section of the act defines a power or prescribes a duty of the commissioners." Matter of Knaust, 101 N. Y. 188, 4 N. E. 338.

It may be said, in passing, that the reason for the original enactment of the constitutional provision now under consideration, and for its strict construction, viz., that legislators and the public might have clearly before them the proposed legislation, and might not be deceived by inadvertence, or by trick or device in adoption of laws of which they had no notice or knowledge, has been to a great extent abrogated by provisions of the Constitution of 1894:

Section 15, art. 3:

"No bill shall be passed or become a law, unless it shall have been printed and upon the desks of the members in its final form, at least three calendar legislative days prior to its passage. * * * "

And section 2, art. 12, providing for the sending of city measures to the city affected, and action thereon by the local authorities before they shall become laws. So far as this bill is concerned, it is a matter of common knowledge that it was most thoroughly and publicly discussed during the session of the Legislature at which it was passed, and it bears upon its face, "Passed without the acceptance of the city of New York," showing that it was transmitted to the mayor and was opposed by him.

While undoubtedly a general bill, yet, in pursuance of the legislative policy to send to the cities affected for greater precaution all bills which, from any point of view, might be claimed to come within that section of the Constitution, it was so sent.

But this act is neither a private nor a local bill. The general subject of the act is not local; that is confined to a particular municipality or particular portion of the state. Obviously it is not a private bill. Such a bill applies only to individuals or corporations, and not to municipalities of the state. As distinguished from private, the bill in question is public; as distinguished from local, the bill is general. It contains no provisions separate and distinct from and not germane to the general subject-matter. The scheme of the act is to create Public Service Commissions for the regulation and control of certain public service corporations. Every section of the act bears directly upon the general scheme. The subject-matter is clearly· indicated in the title, and that title is more detailed and explicit than that sustained in Re Knaust, supra. There is no constitutional objection to embracing several separate matters in a general, as distinguished from a private or local, bill.

The Public Service ·Commissions law is a general act whose provisions cover the whole state. By section 3, two public service districts are created. The First district includes the counties of New York, Kings, Queens, and Richmond; the Second district, all other counties of the state. Each commission, by section 4, is to consist of five members appointed by the Governor, by and with the advice and consent of the Senate, and each commissioner shall be a resident of the district for which he is appointed. The commissioners are removable by the Governor. They are required to make annual reports to the Legislature. Their salaries, together with those of their counsel and secretaries, are paid out of the state treasury. Each commission may hold meetings of the commission at any time or place within the state. Section 11. They may issue subpœnas, which may be.served anywhere in the state, and they may examine witnesses under oath in any part of the state. Sections 11, 19, subd. 2. The commissioners are state officers. The fact that for convenience of administration the state is divided into two districts, and that the members of the commission when appointed are to be residents of their respective districts, no more affects the question than does the division of the state into judicial districts and the requirement that the Justices of the Supreme Court shall be elected by the electors residing in the respective judicial districts.

By section 5, the jurisdiction, supervision, power, and duties of the commission in the First district shall extend (1) to railroads and street railroads lying exclusively within that district, and to the persons or corporations owning, leasing, operating, or controlling the same; (2) to street railroads, any portion of whose lines lies within that district, to all transportation of persons or property thereon within that district, or from a point within either district to a point within the other district, and to the persons or corporations owning, operating, leasing, or controlling the said street railroads; provided, however, that the commission for the Second district shall have jurisdiction over such portion of the lines of said street railroads as lies within the Second district, and over the persons or corporations owning, operating, leasing, or controlling the same, so far as concerns the con-

struction, maintenance, equipment, terminal facilities, and local transportation facilities of said street railroads within the Second district; (3) to such portion of the lines of any other railroad as lies within that district, and to the person or corporation owning, operating, leasing, or controlling the same, so far as concerns the construction, maintenance, equipment, terminal facilities, and local transportation facilities and local transportation of persons or property within that district; (4) to any common carrier operating or doing business exclusively within the district; (5) to the manufacture, sale, or distribution of gas or electricity for light, heat, and power in said district, and to the persons or corporations owning, operating, leasing, or controlling the same; (6) and, in addition thereto, the commission in the First district shall have and exercise all powers heretofore conferred upon the Board of Rapid Transit Railroad Commissioners under chapter 4, p. 3, of the Laws of 1891, and the laws amendatory thereto. All jurisdiction, supervision, powers, and duties under this act, not specifically granted to the Public Service Commission of the First district, shall be vested in and be exercised by the Public Service Commission of the Second district, including the regulation and control of all transportation of persons or property, and the instrumentalities connected with such transportation, on any railroad other than a street railroad, from a point within either district to a point within the other district.

The commission, therefore, for each district, has jurisdiction over the railroads and street railroads whose lines lie within both districts; as to street railroads, the First district commission has jurisdiction over the transportation of persons or property from a point within either district to a point within the other district, and over the persons or corporations operating said roads; but the second district commission has jurisdiction over such portion of the lines as lies within it, so far as concerns construction, maintenance, equipment, terminal facilities, and local transportation. So far as other railroads are concerned lying in two districts, the Second district commission has control of all transportation of persons or property from a point within either district to a point within the other, and the instrumentalities connected with such transportation, while the First district commission has control of the lines within its district so far as concerns the construction, maintenance, equipment, terminal facilities, and local transportation of persons or property within that district. In other words, for certain purposes the jurisdiction of each commission may extend into the territorial limits of the other.

This act is the latest expression of the public policy of the state in reference to public service corporations. The right of the state to regulate and control corporations has always been asserted and recognized, especially so in respect to those corporations upon whom the right to employ the governmental power of condemning private property for public use, and the right to use the public streets, have been conferred. This act, by article 5, abolishes the former Board of Railroad Commissioners, the Commission of Gas and Electricity, inspector of gas meters, and the Board of Rapid Transit Railroad Com-

missioners, and transfers all the power and duties of such boards and officers, theretofore conferred and imposed by statute, upon this new commission, divided into two bodies for convenience of administra-, tion, as the Appellate Division, while one court, is divided into four departments for such convenience. The Public Service Commissions have jurisdiction over every corporation in the state of the classes specified, for the benefit of every individual within the state, by controlling and regulating the use of these public utilities. The citizen of Buffalo who travels to New York, or the citizen of New York who travels to Buffalo, is equally interested in the proper management and control of the railroads, steam, and street, which transport him.

The objection is urged that the provision for payment of the salaries and expenses of the employés of the commission for the First district by the city of New York is a local act, and that, being joined in one bill with general legislation, it offends the section of the Constitution under consideration. It has been held many times that an act providing for the accomplishment of some object, and at the same time providing the means for payment therefor, does not contain two subjects. Harris v. People, 59 N. Y. 599; Matter of Mayer, 50 N. Y. 504; People ex rel. City of Rochester v. Briggs, 50 N. Y. 553; Sweet v. City of Syracuse, 129 N. Y. 316, 27 N. E. 1081, 29 N. E. 289. If so, two acts would have to be passed each time instead of one. This general act makes the following provisions for defraying the expenses necessary for its effectiveness. The salaries of the commissioners, their counsel and secretaries, are paid by the state. The salaries and expenses of the employés of the commission for the Second district are paid by the state. The salaries and expenses of the employés of the commission for the First district are paid by the city of New York—that is, the First district. The salaries and expenses of the commissions are public burdens met by taxation, and are pure governmental expenses. The fact that the salary of the commissioners, their counsel, and the secretary, in the First district are paid directly from the state treasury, and the other salaries and expenses of the employés of that commission from the city treasury, does not alter the fact that both are paid for by taxation and for governmental purposes. Upon the distribution of the burden of taxation, the localities upon which placed, the classes of property upon which imposed, there is no prohibitory provision of the state Constitution. See cases cited in Lincoln's Constitutional History, vol. 4, p. 309, note.

In People ex rel. Griffin v. Mayor of Brooklyn, 4 N. Y. 419, 55 Am. Dec. 266, Ruggles, J., after quoting from Chief Justice Marshall in Providence Bank v. Billings, 4 Pet. 514, 7 L. Ed. 939, and McCulloch v. Maryland, 4 Wheat. 428, 4 L. Ed. 579, said:

" * * * The power of taxation and of apportioning taxation, or of assigning to each individual his share of the burthen, is vested exclusively in the Legislature, unless this power is limited or restrained by some constitutional provision. The power of taxing and the power of apportioning taxation are identical and inseparable. Taxes cannot be laid without apportionment, and the power of apportionment is therefore unlimited, unless it be restrained as a part of the power of taxation. There is not, and since the original organization of the state government there has not been, any such constitutional limi-

tation or restraint. The people * * * have not ordained that taxation shall be general, so as to embrace all persons or all taxable persons within the state, or within any district or territorial division of the state; nor that it shall or shall not be numerically equal, as in the case of a capitation tax; nor that it must be in the ratio of the value of each man's land, or of his goods, or of both combined; nor that a tax 'must be coextensive with the district, or upon all the property in a district which has the character of and is known, to the law as a local sovereignty.' Nor have they ordained or forbidden that a tax shall be apportioned according to the benefit which each taxpayer is supposed to receive from the object on which the tax is expended. In all these particulars the power of taxation is unrestrained."

In People ex rel. Crowell et al. v. Lawrence et al., 41 N. Y. 137, chapter 484, p. 1109, Laws of 1859, entitled "An act to provide for the closing of the entrance of the tunnel of the Long Island Railroad Company in Atlantic street, in the city of Brooklyn, and restoring said street to its proper grade and for the relinquishment by said company of its right to use steam power within said city," was under consideration. This act provided that the Long Island Railroad should close its tunnel in Atlantic street, restore the grade, repair the street, give up its right to use steam power, and run horse cars; that said company should receive as compensation a sum not exceeding $125,000, which, with an amount to cover expenses, not exceeding $5,000, should be assessed upon the lots of land within a prescribed assessment district, and should be levied and collected in the same manner as the county tax was collected. It was held that the act embraced but one subject, and was not obnoxious to section 15, art. 3, of the Constitution. After citing People ex rel. Griffin v. Mayor, supra; Brewster v. City of Syracuse, 19 N. Y. 116; Town of Guilford v. Board of Supervisors of Chenango County, 13 N. Y. 143; Thomas v. Leland, 24 Wend. 65; Howell v. Buffalo, 4 Trans. App. 505; Providence Bank v. Billings, 4 Pet. 514, 7 L. Ed. 939—the court said:

"The settled principles to be deduced from these cases are that the sovereign power of taxation is lodged in the Legislature; that the power of taxing and the power of apportioning taxation are identical and inseparable; that there is no constitutional restraint upon the exercise of this power; that the right of determining what portion of the public burdens, by way of taxation, shall be borne by any individual or class of individuals must be determined by the Legislature; that, however much this power may be abused by the Legislature, the only check upon it is the responsibility of the legislative body to its constituents. * * * This assessment was made for a public object, for a public improvement of the street. That object was the removal of an injurious and dangerous mode of using the street for a railroad to be run by steam, and the substitution of a horse railroad in its stead; embracing, also, the filling up of an objectionable tunnel in the street. These were purposes of public interest to this part of the city, and the Legislature, and not the courts, are constituted the judge of the advantages to the owners of property on the street, and can alone provide for the apportioning of the tax to meet the expense of the improvement."

In Gordon v. Cornes, 47 N. Y. 608, by chapter 466, p. 1015, of the Laws of 1866, the Legislature had authorized the establishment of four additional normal or training schools, and authorized different localities to make proposals for the establishment of such schools therein. Chapter 21, p. 54, of the Laws of 1867, as amended by chapter 96, p. 139, of the Laws of 1867, after reciting that the trustees of the

village of Brookport had made proposals in accordance with the provisions of the first-mentioned act, for the establishment of one of these schools, which had been accepted by the proper authorities, the trustees were authorized, directed, and empowered to carry such proposal into effect, and raise money necessary for that purpose by levying and collecting taxes or borrowing the same on bonds of the village. Such taxes, it was provided, should be collected in the same manner as other taxes in said village, and that the assessment upon which such tax was levied should be in accordance with the last completed assessment roll of the village. The constitutionality of this legislation being attacked, Rapallo, J., said:

"The first alleged ground of objection to the validity of this act is that the institution for which the money was to be raised was not a local one, but was for the equal benefit of the whole state, and that the assessment ought to be imposed with equality upon all property within the state. There can be no doubt of the correctness of the general proposition, that the principle upon which taxation is founded is that the taxpayer is supposed to receive just compensation in the benefits conferred by government, and in the proper application of the tax; and that in the exercise of the taxing power the Legislature ought, as nearly as practicable, to apportion the tax according to the benefit which each taxpayer is supposed to receive from the object upon which the tax is expended. But the power of apportionment is included in the power to impose taxes, and is vested in the Legislature; and, in the absence of any constitutional restraint, the exercise by it of such power of apportionment cannot be reviewed by the courts. * * * To undertake to review the action of the Legislature in this respect, and to enforce by judicial power absolute equality of taxation, or to declare a law unconstitutional on the ground that a locality is taxed for what might seem to the court more than its just proportion of an expenditure for a public purpose, would be a usurpation of the province of the Legislature. * * * No such question arises where a tax is imposed upon a particular locality to aid in a public benefit to that locality as well as to the state at large. When the Legislature has proceeded upon the ground of such mutual benefits, and has undertaken to make the apportionment, inequality in the apportionment of the expenses of the undertaking, with reference to the benefits resulting respectively to the state and to the locality, cannot be alleged for the purpose of impugning the validity of the act."

In Cenet v. City of Brooklyn, 99 N. Y. 296, 1 N. E. 777, Andrews, J., said:

"The power of taxation being legislative, all the incidents are within the control of the Legislature. The purposes for which a tax shall be levied; the extent of taxation; the apportionment of the tax; upon what property or class of persons the tax shall operate; whether the tax shall be general or limited to a particular locality, and, in the latter case, the fixing of a district of assessment; the method of collection, and whether the tax shall be a charge upon both person and property, or only on the land—are matters within the discretion of the Legislature, and in respect to which its determination is final. * * * The learned counsel for the interveners is compelled to admit that the Legislature may distribute the burden of public improvements on its own notions of policy, its own sense of justice, and its own assumptions of benefit."

In Cayuga County v. State, 153 N. Y. 279, 47 N. E. 288, the court had under consideration an act providing for the reimbursement of Cayuga county for moneys expended in the prosecution of criminal cases against convicts confined in the state's prison in that county who had committed crimes therein. Andrews, J., said:

"In this state, from an early period, the state has assumed the expense of maintaining the judiciary of the state, other than judges of local courts; but

the expense incurred in the arrest, indictment, and prosecution of offenders, other than the expense of maintaining the judges, has been imposed by statute upon the several counties where the proceedings were had and made a ·county, charge. * * * An exception to this general policy was created by chapter 389, p. 550, of the Laws of 1882. By that statute the state assumed to pay the expenses of the public prosecution and trial of convicts in the state prisons and in the state reformatory at Elmira for offenses committed by them during their imprisonment, and in cases of convictions for murder in the first degree the expense of executing the sentence and judgment. * * * The Legislature may well have considered that under these circumstances it was just that the burden of the expense of administering the criminal law in those cases should not be borne exclusively by the locality, but should be made a charge upon the state at large. There can be no doubt that the act of 1882 was a legitimate exercise of legislative power. It rests upon the power of taxation. * * * It included the power to apportion the public burthens in such manner as may seem best to the Legislature, and, while the power of taxation is to be exercised for public purposes, its scope is not to be narrowed by refinement, but it exists in unconfined vigor, except where, by express language or necessary implication, its exercise is restricted by the organic law."

The argument that a provision, special in locality, makes an act pro tanto local, has been rejected repeatedly by the courts. Such a rule would make it impossible for the Legislature in many cases to pass a law adapted to the diversified conditions and means of the different localities of the state. In Matter of Wallace, 71 App. Div. 284, 75 N. Y. Supp. 838, chapter 658, p. 1438, of the Laws of 1900, amending the act (Laws 1896, p. 868, c. 908, art. 10) relating to taxable transfers of property, was under consideration. By that law it was provided that the State Comptroller should appoint five persons in the county of New York, two persons in the county of Kings, and one person in the county of Erie to act as appraisers. The salaries of these appraisers were provided for, and the act declared that they should be paid by the comptroller of the city of New York and the treasurers of Kings and Erie counties. In all the rest of the state, appraisers were appointed by the surrogates of the counties. It was attacked as in violation of section 16, art. 3, of the Constitution. Mr. Justice Hatch said:

"The statute in question is not local in character within the meaning of the Constitution. It is an amendment to the general law applicable to the whole state, and simply makes provision for exceptional conditions which obtain in the three largest cities of the state, and evidently contemplates that such change is necessary in order that full force and effect may be given to all the provisions of the act and that the law may be more efficiently enforced. Under such circumstances, it has been repeatedly held that such a statute is not obnoxious to the provisions of the Constitution. People ex rel. Dee v. Bachus, 11 App. Div. 147, 42 N. Y. Supp. 899, affirmed on opinion below in 153 N. Y. 686, 48 N. E. 1106."

In People ex rel. Einsfeld v. Murray, 149 N. Y. 367, 44 N. E. 146, 32 L. R. A. 344, where the constitutionality of the liquor tax law (chapter 112, p. 45, of the Laws of 1896) was before the court, Andrews, C. J., said:

"It is a general state excise law, with such special provisions and adaptations to localities as to the Legislature seemed proper. Whether the law should be uniform in its application to the cities of the state, or whether a discrimination should be made in the excise tax as between New York and any other city, and the extent of the discrimination was in the discretion of the Legislature."

That law is in many respects analogous with the Public Service Commissions law. It abolished all excise boards, state and local; it transferred their powers to one state board; it made special provisions for every large city of the state.

No one would suggest that the general election law (chapter 909, p. 893, of the Laws of 1896, as amended by chapter 95, p. 232, of the Laws of 1901) was not a general act, and yet the amending act repealed sections 358 to 371 of the Greater New York Charter (Laws 1897, pp. 134–138, c. 378), and established an entirely new board of elections for the city of New York with peculiar qualifications, provided for the assumption of the powers and duties of the former board, salaries were fixed, and all expenses made a charge against the city and upon proper vouchers to be paid by the city. The educational system is a state system, and supported by a general state tax; and yet, while the schools in the city of New York are supported by a proportion of the state tax, the greater bulk of the expense of running said schools is met by local taxation in the city of New York. So the state militia is a state institution, part of whose expenses and upkeep is met by state taxation; but the local branch of it is additionally supplied from local taxation. So the judiciary system is a state system, and a portion of its expenses and the salaries of the judges are paid by the state, with a local addition in certain localities. The fact that a part of the moneys necessary to meet such expenditures is raised, in the wisdom of the Legislature, by taxation upon a portion of the state, makes those officers none the less state or general officers, and does not bring the expenditure within the prohibition of the Constitution. The members of the Rapid Transit Commission were named originally in the act under which said commission was appointed (chapter 4, p. 3, of the Laws of 1891), with the addition of certain city officials ex officio. The duties, powers, and jurisdiction of that commission have been transferred to the Public Service Commission, in addition to the new powers granted by the act, and those derived from other statutes providing for the other boards and officers heretofore alluded to.

That portion of section 14 of the act under consideration providing for the manner of payment of the expenses and salaries of employés was taken in hæc verba from the Rapid Transit Commission act, and for the same reason, under that principle of taxation which allows the legislature to apportion taxation with reference to benefits conferred, of which we have seen so many instances in the cases heretofore cited in this opinion, to the locality benefited, and, as held in those cases, was entirely constitutional and proper. The Rapid Transit Commission had most important duties, and performed an immense deal of work. Those duties and that work have been transferred to the Public Service Commission. So that this whole matter, as it seems to me, comes down to a pure question of taxation for public purposes, and therefore absolutely within the discretion of the Legislature as to the apportionment of such taxation.

Second. The appellant claims that the act violates the provisions of section 10, art. 8, of the Constitution, and that portion thereof which says, "Nor shall any such county, city, town or village be allowed to

incur any indebtedness except for county, city, town or village pur-
poses;" but that language is followed by this:

"No county or city shall be allowed to become indebted for any purpose, or
in any manner, to an amount which, including existing indebtedness, shall ex-
ceed ten percentum of the assessed valuation of the real estate of such county
or city, subject to taxation, as it appeared by the assessment rolls of said
county or city on the last assessment for state or county taxes, prior to the
incurring of such indebtedness, and all indebtedness in excess of such limita-
tion except such as may now exist, shall be absolutely void, except as herein
otherwise provided. * * * This section shall not be construed to prevent
the issuing of certificates of indebtedness or revenue bonds, issued in antici-
pation of the collection of taxes for amounts actually contained or to be con-
tained in the taxes for the year when such certificates or revenue bonds are
issued and payable out of such taxes."

This statute does not offend that section, because, within the mean-
ing of that language of the Constitution, no indebtedness is to be in-
curred. The money is to be raised by taxation in the manner in which
other moneys are raised by taxation for other governmental purposes,
and the provisions for the issuance of revenue bonds in anticipation
of the collection of taxes is expressly eliminated from such prohibition
by the section of the Constitution itself under consideration. It has
been the general policy to meet current expenses by taxation; to dis-
tribute the payment for permanent public improvements over a period
of years by the issuance of bonds of municipalities, or as denominated
in the city of New York corporation stock. It is the indebtedness so
created that the provision is aimed at. The purposes for which the
money here under consideration is to be raised and applied are pre-
cisely the same as salaries and current expenses of all other govern-
mental agencies, and to be met in the same way from taxation.

In McGrath v. Grout, 171 N. Y. 7, 63 N. E. 547, Gray, J., said:

"The indebtedness which a county is inhibited from incurring, in our opin-
ion, means one which is created for purposes other than for the maintenance
of the political organization. It has no reference to the obligations of the
county for current expenses of such a nature. The constitutional provision
impliedly sanctions this by expressly excepting from its operation certificates
of indebtedness, or revenue bonds, issued in anticipation of the collection of
taxes for amounts contained in the taxes for the year. Indebtedness for the
current expenses of the county organization is necessarily incidental, and it is
made payable from moneys raised annually by taxation upon the taxable prop-
erty within the county, through the municipal agencies designated by the Leg-
islature for the purpose. We do not think that this would be a tenable ground
of objection to the validity of the enactments."

To conclude, the act is general, not private or local, it contains no
matter not germane to the title thereof, the provision for payment of
the expenses of the commissions created is properly included in the
act creating them, the provision requiring payment of a portion there-
of by taxation upon a specified district is but a matter of apportion-
ment well within the taxing power of the Legislature, and no indebted-
ness within the meaning of section 10, art. 8, of the Constitution is
to be incurred. The act is a valid exercise of legislative power.

It follows, therefore, that the order appealed from should be affirm-
ed, with costs and disbursements to the respondent. All concur.